## CHRISTIAN J. MEGERLE *v.* RICHARD P. ASHE, THOMAS VAN SYCKLE, AND LUTHER FLANDERS.

LEGISLATIVE GRANT OF LAND.—A legislative grant is as effectual to pass title to lands owned by the Government as a grant evidenced by a patent.

PATENT AS EVIDENCE OF TITLE.—A patent is not conclusive, as evidence of title as against a grant made by the legislative department, prior to the patent.

GRANT OF LAND TO STATES BY ACT OF SEPTEMBER 3d, 1841.—The Act of Congress of September 3d, 1841, is a present grant to each new State, upon its admission into the Union, of five hundred thousand acres of land; but the grant does not attach to any particular parcel of land until the State, through its agents, has selected the same, and the selection has been approved by the United States.

CONFLICT BETWEEN STATE PATENT AND UNITED STATES PATENT.—When a State has selected any tract of land as a part of the five hundred thousand acres granted by the Act of Congress of September 3d, 1841, and that selection has been made of public lands subject to the grant, and the selection has been approved by the United States, then the State or its grantee holds the title to the tract selected by a title superior to that asserted by the holder of a subsequent patent issued by the United States.

CONFLICTING PATENTS AS EVIDENCE.—If a plaintiff in ejectment offers in evidence a patent of the United States and rests, the defendant is entitled to offer in evidence a State patent of prior date for the same land, accompanied with proof that the land was selected by the State as part of the five hundred thousand acres granted to the State, and that the United States approved of the selection.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The defendants, Van Syckle and Flanders, were in possession of the land as tenants of defendant Ashe, who claimed to own it and defended on behalf of his tenants.

The following is the patent from the State to Terry:

UNITED STATES OF AMERICA.  }
State of California. }

*To all to whom these presents shall come, Greeting:*

WHEREAS, under the provisions of Act of the Congress of
the United States, entitled "An Act to appropriate the pro-
ceeds of the sales of the public lands and to grant pre-emp-
tion rights," approved September fourth, one thousand eight
hundred and forty-one, five hundred thousand acres of the
public lands were granted to the State of California; and
whereas, the Legislature of the State of California provided
for the selection and location of said five hundred thousand
acres of land, under and in pursuance of said Act of Congress,
by the following Acts of the Legislature of said State, to wit:
an Act entitled "An Act to provide for the disposal of the five
hundred thousand acres of land granted to this State by Act
of Congress, that the people of the State of California may
avail themselves of the benefits of the eighth section of the
Act of Congress, approved fourth April, eighteen hundred and
forty-one, chapter sixteen, entitled 'An Act to appropriate the
proceeds of the sales of the public lands and to grant pre-
emption rights,' the following provisions are hereby enacted,"
approved May 3d, 1852. Also an Act entitled "An Act author-
izing the location and patenting of school lands," approved
April 30th, 1857. Also an Act entitled "An Act to provide
for the location and sale of the unsold portion of the five hun-
dred thousand acres of land donated to this State for School
purposes, and the seventy-two sections donated to this State
for the use of a Seminary of Learning," approved April 23d,
1858. And whereas, the Legislature of the State of Califor-
nia passed an Act entitled "An Act to provide for the issuance
of patents to lands located with State School land warrants,
and for lands purchased under the Act of April twenty-third,
one thousand eight hundred and fifty-eight," approved April
16th, 1859. And whereas, it appears by the certificate of the
Register of the State Land Office, No. 79, issued in accord-
ance with the provisions of said last named Act, bearing date
the sixth day of January, 1862, that the tracts of land here-

inafter described have been duly and properly located in accordance with the provisions of the said laws of this State, and that David S. Terry is entitled to receive a patent therefor;

Now, therefore, the State of California hereby grants to the said David S. Terry, and to his heirs and assigns forever, the said tracts of land located as aforesaid, and which are known and described as follows, to wit : The north half and the southwest quarter of section twenty-one (21), township four (4) north, range eight (8) east of Mount Diablo Meridian, containing four hundred and eighty acres, taken in lieu of four hundred and eighty acres, together with all the privileges and appurtenances thereunto appertaining and belonging.

To have and to hold the aforegranted premises to the said David S. Terry, and to his heirs and assigns, to his and their use and behoof forever.

In testimony whereof, I, John G. Downey, Governor of the State of California, have caused these letters to be made patent, and the seal of the State of California to be hereunto affixed. Given under my hand at the City of Sacramento, the eighth day of January, in the year of our Lord, A. D. one thousand eight hundred and sixty-two.

JOHN G. DOWNEY, Governor of State.

Attest :

[L. S.] JOHNSON PRICE, Secretary of State.

Countersigned :

[L. S.] H. A. HIGLEY, Register of State Land Office.

*Indorsed*—Letters Patent from the State of California, issued January 8th, 1862, to David S. Terry for 480 acres of State school land lying in San Joaquin County.

Plaintiff's patent from the United States did not recite nor purport to be founded upon a pre-emption, but upon a location of a bounty land warrant issued under the Act of Congress of March 3d, 1855, nor did the patent state when the land was surveyed, or at what time the warrant was located.

Plaintiff recovered judgment in the Court below and defendants appealed.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow*, for Appellants.

Defendants offered to prove the recitals in the State patent.

The presumption is that the State officers had complied with the law.

If the law of the State was complied with, the land was vacant and unoccupied at the time of the State location, and was surveyed, etc.; and in that condition the State had a right to select and locate it—as part of the five hundred thousand acres. (See *Doll* v. *Meador*, 16 Cal. 316.) And when she made such selection with the consent of the United States Register and Recorder, to perfect the State title, all that remained was a ministerial act to be performed by the officers of the United States, viz.: the issuance of a patent. The selection by the State could not be overridden by the patent issued to plaintiff at a subsequent date. A patent could not be issued by the United States until the State had made a selection and location. Having made a selection, the United States could not defeat it by issuing a patent to *another* whose selection and purchase were subsequent.

*Tyler & Cobb*, for Respondent.

We maintain two propositions:

First—That a United States patent is *conclusive evidence* of legal title in the patentee, *in an action at law*, as against everything except a *prior patent* from the *same source of title*.

Second—That a patent of the United States cannot be attacked, except for fraud or mistake, and for these *only* in the United States Courts.

In support of the first proposition we cite the Court to the following authorities: *Bagwell* v. *Broderick*, 13 Pet. 436; *Finley* v. *Williams*, 9 Cranch. 164; *Hoofnagle* v. *Anderson*, 7 Wheat. 212; *Brush* v. *Ware et als.* 15 Pet. 93. A patent of the United States carries on its face the presumption that all the previous requisites of the law have been complied with.

(*Polk's Lessee* v. *Wendal*, 9 Cranch. 87.) And this presumption is *conclusive* in an action at law. (*Bagwell* v. *Broderick*, 13 Pet. 436.)

In support of the last proposition we cite the cases of *Bagwell* v. *Broderick*, 13 Pet. 436 ; *Waterman* v. *Smith*, 13 Cal. 419 ; *Moore* v. *Wilkinson*, 13 Cal. 487 ; *Yount* v. *Howell*, 14 Cal. 165 ; *Stark* v. *Barrett*, 15 Cal. 366.

By the Court, RHODES, J.

The plaintiff claims title to the premises in controversy through a patent issued to him by the United States, September 1, 1863 ; and the defendants claim title under a patent issued by the State of California, January 8, 1862, to Terry, the grantor of Ashe. The plaintiff having introduced his patent rested, and the defendants then offered in evidence the patent from the State to Terry, and in connection therewith offered to prove by independent evidence that the statement and recitals in the patent were true, which were in substance that the land had been properly selected and located by the State, as a part of the five hundred thousand acres of land granted to the State, by the Act of Congress of September 3, 1841, and that Terry was entitled to receive a patent from the State for the lands described in the patent. The premises described in the two patents were identical. The Court excluded the patent and the evidence offered in connection with it, and the defendants excepted.

In support of the ruling of the Court the plaintiff advances two propositions : " First, that a United States patent is conclusive evidence of legal title in the patentee in an action at law as against everything except a prior patent from the same source of title ; and second, that a patent of the United States cannot be attacked except for fraud or mistake, and for those only in the United States Courts." If the first proposition cannot be maintained the consideration of the second will be unnecessary, for if the patent is not absolutely conclusive it will be deemed to have been issued without authority of law—

through fraud or mistake—as against a title that passed from the same source of title prior to the date of the patent. The first proposition assumes that, the title of the United States can pass only by a patent, for the learned counsel would not contend that the patent would be conclusive as against a prior *title* derived from the United States simply because the title did not issue in the form of a patent. This assumption stands opposed to a long series of decisions of the Supreme Court of the United States, as well as that of several of the States. In *Rutherford* v. *Greene's Heirs*, 2 Wheat. 196, in which the title of General Greene to the twenty-five thousand acres granted to him by the Act of the Legislature of North Carolina, was in isssue, it being objected that the grant was not complete, because not attested by an instrument having the seal of the State attached. Mr. Chief Justice Marshall, in delivering the opinion of the Court, said that " the Court would certainly have thought it unnecessary to advert to it (the objection) had not the argument been urged repeatedly, and with much earnestness, by counsel of the highest respectability." A legislative grant is as effectual to pass the title to lands, in all respects and for every purpose, as a grant evidenced by a patent. (*Lessieur* v. *Price*, 12 How. 59 ; *Kernan* v. *Griffith*, *ante*, p. 88 ; *Summers* v. *Dickinson*, 9 Cal. 554 ; *Owen* v. *Jackson*, 9 Cal. 322.) The patent, therefore, being of no higher grade, as evidence of title, than a legislative grant, is not conclusive as against a person claiming under a grant made by the legislative department prior to the adverse patent. It may be remarked, also, that the Act of Congress makes no provision for the issuing of a patent to the State or her grantees, and if one should be issued it would amount to no more than a further assurance.

For the purpose of determining the question of the admissibility of the evidence offered by the defendants, it is necessary to ascertain in what manner the title to any particular tract of land passes to the State or her grantee, under the Act of Congress of September 3, 1841, for if the evidence tended to show that the title to the tract in controversy passed to the

State or her grantee, prior to the date of the plaintiff's patent, the Court erred in excluding the evidence.

The eighth section provides that "there shall be and hereby is granted to each new State that shall be hereafter admitted into the Union, upon such admission, so much land as, including such quantity as may have been granted to such State before its admission and while under a Territorial Government, for purposes of internal improvements, as aforesaid, as shall make five hundred thousand acres of land, to be selected and located as aforesaid." The language "hereby is granted" as has uniformly been held by the Courts, imports a present grant. The title to the amount of land specified in the Act passes upon the admission of the new State, though "wanting identity to make it perfect"—to attach it to a particular parcel of land. (*Lessieur* v. *Price*, 12 How. 59; *Rutherford* v. *Greene's Heirs*, 2 Wheat. 196; *Terry* v. *Megerle*, 24 Cal. 609.) The Legislature of a State must thereafter provide by law for the performance by her officers or agents, of the acts that may be requisite to indicate a selection of the tracts of land which, in the aggregate, will constitute the amount of land granted to the State by the Act of Congress. When a particular parcel of land has been "selected and located" in accordance with the provisions of the Act of Congress—when the selection and location have been made by the proper officers or agents, acting on behalf of the State, in such manner as the Legislature has directed, and on public lands that at the time are subject to such location, and the selection and location have been approved by the proper authorities of the United States, then the identification of the land has made the title perfect and attached it to the particular tract selected. The title, thus perfected and attached to the land, vests in the State, or her grantee, and all the interest the United States had in the particular parcel is held by the State or her grantee, by a title superior to that asserted by the holder of a subsequent patent issued by the General Government.

A person claiming title under the Act of Congress, through the State, would be obliged to show, as against one claiming

under the United States through a patent issued in accordance with the general regulations for the sale of public lands, the performance of the acts required by law to constitute the selection and location of the land. This the defendant was proceeding to do when objection was made by the plaintiff. We do not undertake to say that the evidence offered by him would have been sufficient to have sustained his claim of title and upheld his patent from the State; but the offer to show that the recital was true, that the land had been "duly and properly located in accordance with the provisions of the said laws of this State," though general in its terms, certainly included several of the steps necessary to be taken in making the selection and location of the land. The refusal of evidence of the character offered would subject every title to portions of the five hundred thousand acres of land derived from the State to the liability of being defeated by subsequent patents issued by the United States.

The patent from the State was also admissible in connection with proof of the due selection and location of the land. We therefore hold that the decision of the Court in excluding the evidence offered by the defendants was erroneous.

Judgment reversed and the cause remanded for a new trial.