[No. 1,395.]

# B. POPPE *v.* P. A. ATHEARN, AND P. A. ATHEARN *v.* B. POPPE.

FAILURE TO FILE PRE-EMPTION CLAIM.—One who settles on unsurveyed public land as a preëmptioner, but who fails to file with the Register of the proper Land Office his declaratory statement within three months after the plat of survey of the land is filed in the Register's office, loses his preëmption claim, as against one who in the meantime has taken the necessary steps to acquire the title to the land.

EVIDENCE OF FILING PAPER.—An indorsement on the plat of the survey of public land, that it was filed in the Land Office on a day named therein, which is not signed by any one, will, in the absence of other evidence on the subject, be taken as fixing the time of filing the plat.

WHO CAN COMPLAIN OF JUDGMENT.—A party to a judgment who has not appealed will not be heard to allege errors in the Court below.

Per RHODES, J., NILES, J., concurring :

MAKING HOLDER OF UNITED STATES TITLE TRUSTEE FOR HOLDER OF STATE TITLE TO LAND.—One who purchases public land from the State, as a part of the five hundred thousand acres to which it became entitled by the Act of Congress of April 4th, 1841, cannot claim the benefit of a patent for the same land, issued by the United States to another person as a preemption, and make him his trustee holding the legal title.

REGULATIONS FOR DISPOSAL OF PUBLIC LANDS.—The Commissioner of the General Land Office has authority to make regulations respecting the disposal of the public lands, and such regulations, when not repugnant to the Acts of Congress, have the force and effect of laws.

CONSENT OF UNITED STATES TO ENTRY OF LAND BY STATE.—A certificate of the Register of United States lands, issued to one who applies to him to locate a State land warrant on public land, that he approves of the

location by the State, is a legal and valid consent of the United States to such location, because it is prescribed by the Commissioner of the General Land Office. It is also correct to surrender to the Register the State land warrant.

SURVEY OF PUBLIC LANDS.—The provisions of the Act of May 3d, 1852, for the survey of public land by County Surveyors, apply to such lands only as have not been surveyed by the United States.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The Court below gave judgment in favor of Poppe in the ejectment suit, and dismissed Athearn's bill in equity against Poppe. Athearn appealed.

The other facts are stated in the opinion delivered by Mr. Justice CROCKETT, which is here published.

*George Cadwalader,* for Appellant, argued that as the State patent to Athearn was issued in accordance with the laws of the State, it was valid, and that it devolved on the State to provide for the selection of lands donated to it, and cited *Megerle* v. *Ashe,* 27 Cal. 325; Lester's Land Laws, p. 61, Sec. 8; *Bludworth* v. *Lake,* 33 Cal. 262; *Cooper* v. *Roberts,* 18 Howard, U. S., 176.

*G. W. Tyler,* for Respondent.

By the Act of April 16th, 1859 (Hittell's Dig. Art. 4044), under which appellant's patent was issued, the patent was not entitled to issue, unless the location was made by the State, with the consent of the Register and Receiver of the United States Land Office (Hittell's Dig. Art. 4045), and the certificate shows that the assent of the Register only was obtained, which was insufficient to warrant the issuance of the patent.

By RHODES, J., NILES, J., concurring:

The Court did not find the time of the filing with the Register of the Marysville Land Office of the plat of the survey

of the township in which the lands in controversy are situated, but the evidence tending to show the time is recited in the finding. That consisted of the unsigned indorsement on the plat: "Filed in Marysville Land Office, December 5th, 1855"—the same indorsement which was in controversy in *Megerle* v. *Ashe*, 27 Cal. 322, and the subsequent appeal in the same case. The Court also found that the Register and Receiver, on the 15th of February, 1856, published a notice requiring all persons claiming rights of preëmption to file their declaratory statements on or before the 15th day of May, 1856. This finding is attacked, as unsupported by the evidence. The record contains no evidence tending to prove that fact. Both parties proceed on the theory that the plat was filed in the Register's office. The indorsement, though slight evidence—as was held in *Megerle* v. *Ashe*, 33 Cal. 74— will, in the absence of other evidence, be taken as fixing the time of the filing of the plat. Poppe's declaratory statement having been filed on the 16th of April, 1856—which was more than three months after the filing of the plat—came too late to preserve his preëmption claim as against one who had, in the meantime, taken the necessary steps to acquire the title to the land.

Poppe insists that the indorsement on the plat was not given in evidence; but, as he has not appealed, he is not in a position to allege that the Court erred in reciting the indorsement in the finding.

The purpose of the suit brought by Athearn against Poppe is, to compel Poppe to convey to Athearn the legal title to the premises in controversy, on the alleged ground of fraud on the part of Poppe in perfecting his preëmption claim, and, in pursuance thereof, in procuring a patent from the United States. A conclusive answer to the position of Athearn is, that he claims not as a preëmptioner, but as a purchaser from the State; and as such he is not entitled to a patent from the General Government, and, therefore, cannot

claim the benefit of the patent issued to Poppe. That suit was properly dismissed.

The questions discussed at the last argument were whether the surrender of the land warrant and the issuing of the Register's certificate were authorized by any law then in force, and whether a location' so made authorized the issuing of a patent. The Commissioner of the General Land Office has authority to make regulations respecting the disposal of the public lands, and such regulations, when not repugnant to the Acts of Congress, have the force and effect of laws. In the letter of the Commissioner of the 14th of February, 1854, addressed to the Register of the Land Office at Benicia, he refused to return the warrant to the person who had located it on a tract of land, and directed the Register in such case to issue to the person locating a warrant, a certificate of location. The Commissioner prescribed the form of the certificate, and that form was adopted in this instance, and generally in all other cases of the location of warrants since that time.

Those instructions recognize the surrender of the warrants as the correct practice, and make the certificates issued thereupon by the Register legal and valid. Those certificates of location become the basis of the patents issued by the State. Leaving out of view the question whether the patent should issue before the lands have been listed to the State by the Land Department—as the question has not been discussed in this case—there seems to be no valid ground for saying that the Register's certificate is not sufficient to authorize the proper officers of the State Government to take the requisite steps for the issuing of the patent. The provisions of the Act of May 3d, 1852, for the survey of the lands by the County Surveyor, and all the proceedings founded on such survey, are applicable only to unsurveyed lands. The observance of those provisions would be useless and vain where the lands have been surveyed by the United States.

Judgment in *Athearn* v. *Poppe* affirmed, and judgment in *Poppe* v. *Athearn* reversed, and cause remanded for a new trial.

CROCKETT, J., concurring:

I concur in the judgment on the grounds stated in the opinion which I have heretofore delivered in this case.

Mr. Justice WALLACE being · disqualified, did not sit in these cases.

[The opinion to which Mr. Justice CROCKETT refers in his concurring opinion was filed at the April Term, 1868, and was concurred in by SAWYER, C. J., SANDERSON, J., RHODES, J., and SPRAGUE, J. The Court afterwards granted a rehearing, and the foregoing opinion was delivered after reargument. The following is the opinion delivered at the April Term, 1868, and to which reference is made as containing the facts of the case. The first three head notes cover the points on which both opinions agree. After a rehearing the first opinion is understood to be no longer the opinion of the Court, unless it is adopted in the subsequent opinion.— REPORTER.]

By CROCKETT, J. :

The respondent, Poppe, brought ejectment against the appellant Athearn to recover a tract of land in San Joaquin County, in which action an answer was filed denying title in the plaintiff, and setting up title in fee in the defendant. During the pendency of this action the defendant filed his bill in equity against the plaintiff, setting forth in substance that the land in contest, which is the southeast quarter of section eleven, township four north, range eight east, was, in the year 1850, in the actual and exclusive occupation of

Elliott and Loring; that Loring conveyed his interest in the
tract to Elliott, and in March, 1852, Elliott conveyed to
Vance; that Vance was the owner of a school land warrant
issued under the Act to provide for the disposal of the five
hundred thousand acres to which this State became entitled
under the Act of Congress of April 4th, 1841; that in accord-
ance with the Act of the Legislature, Vance located his war-
rant on the land in contest; that subsequently the United
States caused the land to be surveyed and sectionized, and
the plat of the survey was filed in the proper United States
Land Office on the 5th December, 1855; that on the 10th
March, 1856, Vance applied to the proper United States
Register to locate his warrant on the quarter section in dis-
pute; that the location was approved by the Register, who,
on that day, issued his certificate to that effect to Vance, and
the warrant was thereupon surrendered and canceled; that
Vance afterwards assigned the certificate to the appellant
Athearn, who, on the 8th January, 1862, obtained a patent
from the State; that in 1851 the respondent Poppe occupied
for a time a cabin on this tract, as the tenant of Elliott and
Loring, but in September, 1852, left the cabin and moved
into a house he had built on the adjoining quarter in section
ten, where he continued to reside until October, 1855, when
he sold his improvements on section ten and moved back to
the quarter section in contest on section eleven, into a house
he had erected thereon, and on the 16th April, 1856, filed in
the proper Land Office a notice of his intention to claim as
a preëmptor the quarter section in contest; that by the laws
of the United States he was not entitled to preëmpt the land,
and the appellant was entitled to hold it under his school
land warrant; but notwithstanding all the facts above stated
and with a full knowledge of them, the Secretary of the
Interior, in violation of law, awarded the land to the respond-
ent as a preëmptor, who subsequently, in 1863, obtained from
the United States a patent therefor; that the respondent is

in possession of forty-seven acres, and the appellant of the remainder of the quarter section, on which he has erected permanent and valuable improvements; that the respondent had commenced an action of ejectment against the appellant to recover the whole quarter section, relying on the patent from the United States as conclusive evidence of title; that said patent is a cloud on appellant's title, and was fraudulently obtained and issued in violation of law. The prayer of the complaint is that the respondent be decreed to release his title to the appellant, and for an injunction against the ejectment suit.

The answer denies the possession of Elliott and Loring, the deraignment of title from them to appellant, the issuing of the school land warrant and the location thereof by Vance; it also denied that the respondent ever occupied the land as the tenant of Elliott and Loring, or that the township plat was filed in the Land Office on the 5th December, 1855, or at any time earlier than March 1st, 1856. In short, it denies every material averment of the complaint, and sets up, as affirmative matter, that he settled upon the land as a preemptor and was entitled by law to preëmpt it, and, after complying with the requirements of the law in that respect, obtained his patent therefor; that appellant contested his rights before the Land Department, and that all questions of fact in regard to the settlement, residence, and bona fides of the respondent were heard and decided by the proper officers of the United States; after which hearing the land was awarded to the respondent; and thereafter the appellant, by perjury and fraud, procured a patent to be issued to him by the State of California.

The two actions were heard together before the Court without a jury.

In its findings the Court finds that there was no fraud on the part of Poppe in obtaining his patent, and also the following facts:

First—That in August, 1851, Poppe settled upon the quarter section in controversy, which was then unsurveyed public land of the United States, and has ever since been in the exclusive possession of about forty-seven acres thereof.

Second—That said land was surveyed by the United States in the Summer of 1855, and the township plat was duly filed in the proper Land Office; that, after the filing of the plat, the Register and Receiver, on the 15th of February, 1856, gave notice through the public press (being the first notice given in the premises), requiring preëmptioners to appear and file their preëmption claims on or before the 15th of May, 1856, and that Poppe filed his notice on the 16th of April, 1856.

Third—That the only evidence produced as to the date at which the township plat was filed in the Land Office was an indorsement on the plat itself of the words: "Filed in Marysville Land Office, December 5th, 1856," which indorsement was not signed by any one, and there was no evidence to show when, or by whom, or by whose authority the indorsement was made; that Athearn was in possession of all the quarter section, except the forty-seven acres in possession of Poppe.

Fourth—That prior to the Government survey, to wit, in December, 1852, Vance being then in possession of one hundred and thirteen acres of the tract, located a school land warrant on that quarter section; and after the survey, to wit, March 10th, 1856, applied to the United States Register for permission to locate it on the same quarter section, and surrendered the warrant to be canceled; whereupon the Register approved the location, and issued his certificate to that effect; after which Vance assigned the certificate to Athearn, who afterward, to wit, on the 8th of January, 1862, obtained a patent from the State.

Fifth—That Athearn and Poppe, pending the proceedings before the United States Land Department, both appeared

and litigated their rights, and after the decision in favor of Poppe, a patent was issued to him in October, 1863.

Sixth—That for a long time prior to and ever since the date of the patent to Poppe, Athearn was in the actual possession of the one hundred and thirteen acres, claiming title in himself; and the Court finds the value of the rents and improvements.

As a conclusion of law, the Court finds that Poppe is entitled to judgment for the possession, and for the value of the rents, and judgment was entered accordingly.

The appellant moved to correct the findings, and submitted to the Court a series of findings, which, in the main, were not only different from, but, in some respects, contradictory to the findings of the Court. The Court refused to change or modify its findings, and the appellant excepted.

A motion for new trial was made by appellant, which was denied by the Court, and the case comes here on appeal from the judgment as well as from the order denying the motion for new trial.

The first point to be considered is, whether or not Athearn can appeal to a Court of equity, upon the facts stated in his complaint, to revise the decision of the Secretary of the Interior in respect to the preliminary steps which were necessary to be performed by Poppe to entitle him to a patent on his application for a preëmption.

In cases of fraud there can be no doubt that a Court of equity will give relief, not only when the officers of the Government have been parties to the fraud, but also when they have been made the innocent instruments of perpetrating a wrong by means of the fraudulent practices of others. Hence it has been held that when the United States Register and Receiver have been imposed upon by false affidavits or perjured witnesses, whereby the land has been awarded and patented to the wrong person, the Courts will interfere and redress the wrong. Otherwise there could be no relief in

such cases. (*Garland* v. *Wynn*, 20 How. 6; *Lytle* v. *State of Arkansas*, 22 How. 192.) But even in cases of fraud the Court will not, in a collateral action, go behind the patent to inquire into the regularity or sufficiency of the preliminary proceedings, except at the instance of an adverse claimant, who has acquired an equity in the land which entitles him to protection. Whenever such equities exist, a Court of equity will look behind the patent and award the legal title to the party holding the oldest and best equity.

Even in actions at law, where there are conflicting patents for the same land, the Court will go behind the patents to ascertain which party had the prior equity; and if the junior patent is founded on the prior equity, it will take effect by relation from the time when the equity accrued, and override an older patent founded on a junior equity. (*Ross* v. *Barland*, 1 Pet. 655; *Bagnall* v. *Broderick*, 13 Pet. 436; *Smith* v. *Athearn*, 34 Cal. 506.)

In the case under consideration, Athearn had the oldest patent, founded on his school land warrant, which was located on the 10th of March, 1856, after the lands had been duly surveyed. In the action of ejectment, without the aid of a bill in equity, the production of his patent and proof of the location of the warrant, after the survey, would have established a prima facie case as against Poppe's junior patent, standing alone, and without proof of the preliminary acts on which the patent was founded.

This rendered it necessary for Poppe to support his patent by proof of the preliminary steps, in order to show that, before the location of the school land warrant, he had acquired an equity in the land which exempted it from location under the school land warrant.

It was, therefore, competent and proper for the Court to hear proof on that subject, in order to ascertain which party had the prior equity. To establish Poppe's prior equity, it was incumbent on him to show at what date he

commenced to perform the series of acts which culminated in his patent. The patent itself, without further proof, raises a presumption that he possessed the proper status as a preëmptioner, and had performed the necessary acts to entitle him to a patent; but it raises no presumption as to the time at which the performance of the acts commenced; and all the presumptions arising from the patent were liable to be rebutted by proof.

In respect to the time at which Poppe performed the first act, the Court finds that he "settled upon" the land in August, 1851, and from that time up to the trial had been in the exclusive possession of forty-seven acres of the tract. It does not find that he ever resided on the tract, unless that is to be inferred from the term "settled upon," nor does it find that he erected a dwelling house, or other improvements, or ever cultivated any portions of the premises.

The incipient steps toward a valid preëmption claim are that the party shall " cultivate and improve the same," and "shall erect a dwelling thereon." This is expressly required by the tenth section of the Act of Congress of September 4th, 1841. Without a performance of these acts there can be no valid foundation of a preëmption claim.

But although the findings are silent on these points, the " Act to regulate appeals in this State," approved May 20th, 1861 (Stats. 1861, p. 589), which was in force when this case was tried, provides that "in cases tried by the Court, without a jury, no judgment shall be reversed for want of a finding, or for a defective finding of the facts, unless exceptions be made in the Court below to the finding or the want of a finding;" and the statute points out how defective findings may be remedied.

In construing this statute we have repeatedly held that where the findings are silent as to material facts necessary to support the judgment, and no effort is made to correct them, we will presume in aid of the judgment that the

necessary facts were proved, unless the contrary appears. (*Hidden* v. *Jordan*, 28 Cal. 301; *Lucas* v. *San Francisco*, 28 Cal. 591; *James* v. *Williams*, 31 Cal. 213; *Lyons* v. *Leimbach*, 29 Cal. 139.)

It follows that if Athearn intended to controvert the fact that Poppe had resided upon the land, and erected a dwelling thereon, prior to the time when Vance's equity accrued, and if he believed that these facts were not proved on the trial, he should have moved to correct the findings in that respect; and if the Court refused to find at all on the point, or found contrary to the evidence, the statute points out the remedy.

But as the case is now presented, we must assume, in support of the judgment, that these essential facts were proved, inasmuch as Athearn did not except to the findings in this particular.

In this view of the case it would be our duty to affirm the judgment, if no error had occurred in denying the motion for new trial.

But the Court finds facts sufficient to show that the township plat was filed in the office of the Register and Receiver on the 5th of December, 1855; and it finds as a further fact that the Register and Receiver, " on the 15th of February, 1856, gave notice through the public press," for the first time, that all persons claiming preëmption rights upon any of the lands in that township should appear and file their notice of preëmption on or before the 15th of May, 1856.

One of the grounds for new trial was that the Court failed to find it as a fact that the township plat was filed in the office of the Register and Receiver on the 5th December, 1855, and that there was no evidence to support the finding that the Register and Receiver published the notice on the 15th February, 1856, as set forth in the finding.

These grounds for a new trial were well taken.   Instead of finding distinctly, as it should have done on the evidence, at what date the township plat was filed, the Court only reports the evidence on that point; and in respect to the publication of the notice by the Register and Receiver to preëmptioners, we find no evidence whatever in the record to support the finding on that branch of the case.   These were material facts, which may be decisive of the action; for if the township plat was filed on the 5th December, 1855, and notice thereof was immediately given by the Register and Receiver, then the notice of his intention to claim a preëmption, which was filed by Poppe on the 15th April, 1856, came too late.   The Act of Congress of March 3d, 1853, regulating the survey of public lands in California, provides that the declaratory statement must be filed within three months after the return of the township plat to the Land Office, and there is no authority in the Land Department to dispense with this condition.   (*Megerle* v. *Ashe*, 33 Cal. 74.)

It was, therefore, a most material fact to ascertain whether or not Poppe's notice was filed within the proper time; and in order to do this, it is necessary to ascertain with certainty when the township plat was filed, and when the notice to preëmptioners was published—if any such notice was published; of which fact, however, there is no proof in the record.

For the reasons stated above the Court below ought to have granted the motion for a new trial.

The counsel for the respondent has pressed upon our consideration, with much earnestness, the proposition that both the appellant. and the respondent having appeared before the United States Land Department, and litigated their respective rights, the appellant is estopped thereby from requiring further proof that the respondent has the prior equity to the land.

We deem it proper to say for the guidance of the District Court on another trial, that we do not acquiesce in this view of the law. The Land Department had no power to adjudicate the rights of the appellant. After his warrant was located and canceled, and the location approved by the Register, the equity of the appellant attached; and it was not in the power of the Land Department to detract from or add to his rights. His appearance before the Land officers of the United States could confer upon them no jurisdiction, where none existed by law. (*Megerle* v. *Ashe,* *supra.*) It follows that their decision was not obligatory upon him, and so far as it affected his rights was *coram non judice.*

Judgment and order denying a new trial reversed, and cause remanded for a new trial.