Negrón Soto, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El Estado Libre Asociado de Puerto Rico apela ante nos de la Sentencia emitida el 12 de marzo de 1998 por el Tribunal de Primera Instancia, Sala Superior de Ponce, notificada el 17 de marzo siguiente, que declaró con lugar la demanda presentada por el señor Ricardo Nazario Acosta, en lo sucesivo Nazario Acosta, y otros, condenando a los allí demandados al pago de daños. Dicho Foro concluyó que los demandados, aquí apelantes, habían discriminado contra Nazario Acosta y lo habían mantenido por doce años "en un limbo administrativo que no le permitió obtener nunca los beneficios *759 e ingresos a que tenía y tiene derecho” razón por la cual procedía la compensación solicitada. Sentencia apelada, pág. 11. Por los fundamentos que se exponen a continuación se modifica la sentencia apelada.
I
Nazario Acosta trabajó para la Policía de Puerto Rico desde el año 1968 hasta el 31 de mayo de 1985, ocupando allí varios puestos. Así, en el año 1978, durante los meses de septiembre y octubre, trabajó como parte de la escolta del gobernador, Hon. Carlos Romero Barceló, y en agosto de 1981 como director de la División de Drogas y Narcóticos de Ponce, desde donde promovió una investigación sobre supuestas irregularidades cometidas por el agente encubierto señor Juan A. González, quien había sido asignado a dicha división.
El señor González Hernández alegó que había sido asaltado y agredido por narcotraficantes. Posteriormente, dicho agente cambió la versión de los hechos y alegó que había sido agredido por agentes de la División de Drogas y Narcóticos de la Policía, la cual en ese momento dirigía Nazario Acosta. Dicha noticia fue publicada en el periódico El Vocero. El Comandante del área de Ponce, señor Héctor M. Rivera Martínez, ordenó, entonces, el traslado temporero de Nazario Acosta al Negociado de Asuntos Criminales en el Cuartel General de Hato Rey mientras se investigaba lo publicado en los medios noticiosos del país. El 16 de noviembre de 1984, días después de haberse celebrado las elecciones en Puerto Rico, se le informó que sería trasladado de manera permanente a San Juan.
Se adujo como razón para dicho traslado el que el Negociado de Servicios de Inspección y Asuntos Disciplinarios había comenzado una investigación sobre la información publicada en El Vocero. Además, el agente encubierto González promovió el inicio de una investigación sobre la conducta de Nazario Acosta y otros en la Comisión de Investigación, Procesamiento y Apelación, en lo sucesivo C.I.P.A. 
El 26 de noviembre de 1984 Nazario Acosta solicitó la reconsideración de la orden que lo trasladaba a San Juan. Esta, al igual que otra interpuesta posteriormente, fue denegada ya que se encontraba pendiente una investigación sobre su conducta. Este no apeló a J.A.S.A.P.
El 13 de mayo de 1985 Nazario Acosta presentó su renuncia por escrito efectiva al día 31 de mayo de 1985. Este, según se dispone en la Sentencia apelada, renunció ya que había sido relevado de sus funciones, degradado, marginado y sometido a una investigación administrativa por el período de nueve meses. Además, el 31 de mayo de 1985, hizo constar su renuncia con carácter irrevocable en el Libro de Entradas y Salidas de la Policía. 
El 8 de agosto de 1985 Nazario Acosta le escribió una carta al entonces Superintendente de la Policía, Lie. Andrés García Arache, a los efectos de que le fuera aceptada su renuncia. El 28 de agosto del mismo año éste le informó a Nazario Acosta que la carta relacionada con su renuncia había sido referida a la Oficina de Asuntos Legales de la Policía. El 9 de septiembre siguiente, mediante correspondencia dirigida al Superintendente de la Policía, informó que se había mudado al estado de Alaska de donde regresó en el año 1986. Luego de su regreso, el 15 de octubre de 1986 Nazario Acosta le escribió una carta al Superintendente de la Policía retirando su renuncia. Dicha carta nunca fue contestada por la Policía. Este, anteriormente, había solicitado una licencia para tener y poseer un arma de fuego, la cual le file denegada el 5 de abril de 1986 porque se estaba llevando a cabo una investigación administrativa en su contra. El 6 de octubre de 1986 el Tribunal Superior, Sala de Ponce le ordenó al Superintendente de la Policía otorgarle la licencia para tener y poseer un arma de fuego como jefe de familia. Luego, Mediante la Resolución de 26 de junio de 1987 dicho Foro lo autorizó a portar sobre su persona el arma de fuego allí descrita. Posteriormente, durante el año 1989, éste también solicitó la liquidación de sus ahorros y dividendos a la Asociación de Empleados del E.L.A., el dinero perteneciente al Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus instrumentalidades, en lo sucesivo Retiro, y el importe monetario de sus vacaciones y días por enfermedad acumulados. El desembolso de dichos fondos le fue denegado el 28 de septiembre de ese mismo año a consecuencia de la investigación administrativa que se seguía en su contra.
Nazario Acosta, también solicitó en el año 1989 una licencia de detective, la cual en principio le fue *760 denegada por la misma razón. El 4 de febrero de 1992 se le concedió la misma.
El 15 de diciembre de 1988 Nazario Acosta presentó demanda contra el Estado Libre Asociado de Puerto Rico, en adelante E.L.A., la Policía de Puerto Rico, Hon. Rafael Hernández Colón, su esposa señora Lila Mayoral y su sociedad de bienes gananciales, Lie. Carlos López Feliciano, su esposa, señora López y la sociedad de bienes gananciales por ellos constituida, Jorge L. Collazo, su esposa señora Collazo y su sociedad legal de bienes gananciales, Lie. Andrés García Arocho, su esposa señora García y la sociedad legal de bienes gananciales por ellos constituida, señor Hector M. Rivera Hernández, su esposa señora Rivera y la sociedad legal de gananciales por ellos constituida; señor Luis A. Gómez Sotomayor, su esposa señora Gómez y la sociedad legal de gananciales por ellos constituida; señor Juan A. González Hernández, su esposa señora González y la sociedad legal de gananciales por ellos constituida. Alegó que la actuación de los demandados fue una ilegal e inconstitucional; que la misma correspondió al hecho de que él estaba afiliado al Partido Nuevo Progresista; que éstos se han negado a aceptar su renuncia o el retiro de la misma; que la Policía de Puerto Rico fue negligente al extender de manera indefinida la investigación que contra él se realizaba; que éste y su esposa son objeto de persecución e investigación, lo que constituye un daño continuo contra él y su familia; que a consecuencia de dichas actuaciones se le ha negado el ingreso a instituciones educativas de Puerto Rico y que dicha actuación constituye una violación al Reglamento de la Policía de Puerto Rico, a la Ley de Personal del Servicio Público, a la Ley de Derechos Civiles Federal, 42 U.S.C.A. see. 1983, al Artículo II, Sección I de la Constitución del Estado Libre Asociado de Puerto Rico y a la Primera y Catorceava enmienda de la Constitución de los Estados Unidos. En atención a ello, solicitó compensación por concepto de daños a su reputación en la comunidad, los cuales estimó en $150,000. Además, reclamó indemnización por encontrarse impedido de disfrutar de los beneficios acumulados por años de servicio en la policía, como vacaciones y horas de trabajo acumuladas, suma que estimó en $60,000. Su esposa, señora Irene Pomales, también, solicitó la compensación de $100,000 por concepto de angustias y sufrimientos mentales. Por último, ambos solicitaron a nombre de su sociedad de bienes gananciales la suma de $50,000 por concepto del sueldo dejado de percibir por Nazario Acosta.
El E.L.A. alegó que la demanda estaba prescrita. Esta solicitud de desestimación fue declarada no ha lugar por el Foro de instancia. El 25 de septiembre de 1995 el E.L.A. presentó su contestación a la demanda, donde levantó, entre otras, como defensas afirmativas el hecho de que la demanda se encontraba prescrita y que era de aplicación la doctrina de actos propios. Posteriormente, el E.L.A. presentó otra solicitud de desestimación y/o sentencia sumaria, a la cual Nazario Acosta se opuso. Finalmente, el Tribunal de Primera Instancia declaró dicha solicitud no ha lugar.
Luego de escuchada la prueba testifical, de ser considerada la prueba documental y de adjudicarse la credibilidad de los testigos en el juicio celebrado, el 12 de marzo de 1998, el Foro de instancia dictó Sentencia en el caso. Estableció que Nazario Acosta fue discriminado por razones políticas y obligado a renunciar contra su voluntad, "además, de permanecer por más de doce años en un limbo administrativo que no le permitió obtener nunca los beneficios e ingresos a que tenía y tiene derecho." Ibid. Estableció que Nazario Acosta sufrió "daños continuos y permanentes a su reputación y vida personal ante el hecho de no resolverse toda esta situación". Ibid, pág. 6. Además, expresó que los demandados habían sido negligentes al mantener de forma indefinida la investigación y que Nazario Acosta a consecuencia de la actuación negligente de los demandados había sufrido daños a su reputación en la comunidad, sufrimientos y angustias mentales. Ordenó a los demandados, pagar la suma de $75,000 a los demandantes, además, de las partidas acumuladas desde el 31 de mayo de 1995 por concepto de vacaciones, días por enfermedad, aportaciones a Retiro, más la cuantía adeudada por concepto de la mesada y el salario dejado de percibir por Nazario Acosta. Inconforme, el E.L.A. apeló ante nos el 18 de mayo de 1998 y alegó que el Foro recurrido erró al:
"no acoger las defensas de prescripción y de la doctrina de actos propios; concluir que el demandante probó un caso de discrimen político, y ordenar el pago de la mesada y el pago en concepto del sueldo dejado de percibir por el demandante."
Nazario Acosta presentó su alegato el 17 de junio siguiente. Sostuvo que no se cometieron esos errores y solicitó que se modificara la Sentencia para que se condenara a los co-demandados en su carácter oficial y personal a pagar a la señora Irene Pomales, su esposa, la suma de $25,000. 
*761 El 29 de junio de 1998 el E.L.A. replicó al alegato de Nazario Acosta. Expuso que no procede asignarle la suma solicitada por concepto de daños a la señora Irene Pomales, co-demandada, ya que ella debió haber interpuesto un recurso de apelación ante este Foro apelativo dentro del término dispuesto por ley, lo que no hizo.
Habiéndose sometido los alegatos por las partes estamos preparados para resolver.
Consideremos, en primer lugar, si la causa de acción presentada por Nazario Acosta está prescrita.
II
La existencia de la prescripción de las acciones pretende cumplir con el propósito fundamental de
"garantizar la estabilidad económica y social de las relaciones bilaterales al estimular el rápido cumplimiento de las obligaciones contractuales o legales y procurar así la tranquilidad del obligado contra la eterna pendencia de una acción civil en su contra... Esta figura se funda en el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar "el señorío de las cosas" al evitarse litigios difíciles de adjudicar por la antigüedad de las reclamaciones... El efecto práctico del transcurso del término prescriptivo es claro. Una vez "[cjumplida la prescripción que quita al derecho del acreedor su fuerza coactiva, por despojarlo de la acción, se ha satisfecho el interés público, y es al particular interesado a quien le corresponde su liberación para satisfacer sus conveniencias individuales ...Extinguida la acción destinada a hacer valer el derecho, resta tan sólo entre las partes una obligación natural o moral irreclamable por la vía judicial...". Cintrón v. E.L.A., 127 D.P.R. 582, 588-589 (1990).
Establece el Código Civil de Puerto Rico en su Artículo 1868, 31 L.P.R.A. sec. 5298, que "prescriben por el transcurso de un año...(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado." A esos efectos, nuestro más alto Foro ha entendido que dicho período aplica a las reclamaciones de daños relacionadas con el traslado de un funcionario público su despido y a las causas de acción relacionadas con las violaciones de derechos civiles. 
El término prescriptivo bajo el Artículo 1868 comienza a computarse desde el momento en que el agraviado conoce de su ocurrencia. Así, en Cintrón v. E.L.A., 127 D.P.R. 582, 591 (1990) se estableció que "no es el instante de la producción del daño lo que determina el comienzo del término prescriptivo, sino el momento en que el perjudicado lo conoce".
En el caso de marras Nazario Acosta alega que sufrió daños continuos y sucesivos desde el 16 de noviembre de 1984, los cuales se extienden hasta el presente, producto de la investigación, traslado y del despido constructivo por razones políticas del cual fue objeto. Conforme a ello sostiene que su causa de acción no está prescrita.
H.M. Brau del Toro, expresa en su obra Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da ed., Publicaciones JTS, San Juan, Puerto Rico, 1996, vol. II, págs. 643-644, que los daños sucesivos son:

"Una secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, o aun continuamente, pero que se van conociendo en momentos distintos entre los que media un lapso de tiempo finito, sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable. Dicho en otras palabras, se trata de una secuencia de daños ciertos que se repiten (sin que sea necesario que sean idénticos en su naturaleza, grado, extensión y magnitud), cuya repetición no es previsible en sentido jurídico ni son susceptibles.

Tales consecuencias lesivas pueden ser causadas por una secuencia de actos culposos o negligentes del actor, o por un acto único o varios coétaneos que no se repiten pero que pueden seguir ejerciendo su efecto lesivo en forma sostenida y duradera, cuyos actos no son previsibles en supuesto alguno o, de serlo, no permiten prever las consecuencias lesivas que producen y que son conocidas 
*762
posteriormente en forma repetitiva o sucesiva... El término de prescripción para el ejercicio de cada una de ellas comienza a contar en el momento en que se reconoce el respectivo daño particular. Dicho en otra forma, con sujeción a la doctrina cognoscitiva del daño, cada manifestación y reconocimiento de una consecuencia lesiva motivada por una actuación culposa o negligente efectuada por el actor, constituye un daño distinto que origina una causa de acción resarcitoria independiente."

Además, define los daños continuados de la siguiente manera:

"Para nosotros son daños continuados aquéllos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca -por ser previsible- el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto.

En este supuesto la doctrina cognoscitiva del daño señala que el daño habrá nacido en el momento en que se conozca, y que en ese momento se habría originado una causa de acción para el perjudicado, cuyo término de prescripción habrá comenzado a contar en el momento del conocimiento del daño." Ibid, pág. 648.
Los alegados daños en el caso de autos producto del traslado; despido constructivo y de la investigación válida conducida por el tiempo permitido por ley de que sostuvo Nazario Acosta que fue objeto, no se produjeron ni se manifestaron periódicamente. Tampoco fueron producidos por actos negligentes coetáneos ni resultaron en daños ininterrumpidos o duraderos. No estando presente ninguna de esas circunstancias debemos concluir que no nos encontramos ante daños sucesivos ni continuados. Ante esta situación fáctica procedemos a considerar cuándo comenzó a decursar el término prescriptivo en el caso ante nos.
El Artículo 1868 del Código Civil en su inciso (2), 31 L.P.R.A. sec. 5298(2) establece "que prescribe al transcurrir un año la acción para exigir la responsabilidad civil por injuria y calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en el Artículo 1802 de este Código, desde que lo supo el agraviado". Dicho término "se contará desde el día en que pudieron ejercitarse". Artículo 1869 del Código Civil, 31 L.P.R.A. sec. 5299.
De otro lado, está establecido que en los casos de cesantías de empleados públicos o cuando un empleado público:
"es objeto de una acción discriminatoria, arbitraria o ilegal, bien sea despido, traslado, reclasificación, cambio de status..., el término prescriptivo comienza a correr con la notificación al empleado de la actuación administrativa de la autoridad nominadora y no con el decreto de ilegalidad del foro administrativo. Es desde aquel momento que el empleado tiene o debe tener conocimiento de los daños causados por la actuación de la agencia." Cintrón v. E.L.A., supra, págs. 591-592.
Más específicamente, en Ríos Quiñones v. Adm. Servicios Agrícolas, 96 J.T.S. 71, pág. 1133, se resolvió que en los casos en que una persona trasladada de su trabajo solicita reconsideración de dicha decisión y el patrono deniega la misma, ratificando a su vez el traslado, el término prescriptivo comienza a transcurrir cuando el patrono emite esta última decisión, pues ese es el momento en que el traslado se convierte final.
AI aplicar estas normas de derecho a la situación fáctica de nuestro caso, surge que la investigación administrativa que se efectuó contra Nazario Acosta comenzó en 1984.
Como consecuencia de ella y del traslado ordenado el 16 de noviembre de 1984, del cual Nazario Acosta solicitó reconsideración el 26 de noviembre de 1984, éste presentó su renuncia de manera irrevocable, efectiva al 31 de mayo de 1985. Aunque su renuncia no fue aceptada en ese momento, pues se mantenía vigente una investigación en su contra, éste decidió abandonar su empleo al no *763 reportarse a trabajar y se mudó, según lo informó en carta del 9 de septiembre de 1985, al estado de Alaska donde residió hasta el año 1986 en que regresó a Puerto Rico. Fue en ese momento cuando solicitó el retiro de su renuncia. A esos efectos, Nazario Acosta, conocía de la existencia de los daños que le fueran causados por dichas actuaciones y no fue hasta el 15 de diciembre de 1988 que presentó su demanda para reclamarlos, estando ya su causa de acción en cuanto al discrimen por razones políticas prescrita. En atención a ello no procede el pago de la mesada ni los salarios dejados de percibir.
No obstante, es menester examinar en particular si existía causa de acción alguna en relación a la investigación administrativa que realizaba el Negociado de Servicios de Inspección y Asuntos Disciplinarios de la Policía y la C.I.P.A. durante doce años y si la misma estaba prescrita. A este respecto el Foro de instancia estableció que la Policía no presentó cargos administrativos contra Nazario Acosta dentro del período reglamentario. De hecho, la Policía solicitó una prórroga de noventa (90) días ante la C.I.P.A. para llevar a cabo la antes referida investigación. Aunque dicha prórroga fue concedida y vencía el 21 de febrero de 1985, la Policía no presentó ningún cargo administrativo contra Nazario Acosta. Además, el Tribunal de Primera Instancia estableció que:

"17. Los co-demandados ELA y Policía han mantenido inconclusa esta supuesta investigación durante estos últimos doce años hasta el presente.

18. Los co-demandados ELA y Policía, han informado a otras agencias públicas y privadas, organizaciones y personas particulares que el demandante ha sido objeto de una investigación administrativa..." (Sentencia apelada, pág. 4.)
Se ha mantenido una "investigación administrativa" por espacio de aproximadamente más de doce años, a sabiendas de que se carecía de jurisdicción y que el organismo apelativo (CIPA) había concedido una prórroga y ésta estaba vencida desde principios de 1985... (Sentencia apelada, pág. 9.)
De lo antes expresado se puede inferir que el tiempo concedido por la C.I.P.A. para terminar la investigación del caso transcurrió con creces. A esos fines, en el Artículo 2 de la Ley Núm. 32 de 22 de mayo de 1972, 1 L.P.R.A. see. 172, se dispone, que:
La Comisión tendrá las siguientes funciones:

"(1) En caso de que se impute mal uso o abuso de autoridad a cualquier agente del orden público, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado para efectuar arrestos, si la autoridad facultada para sancionar [a] dicho funcionario público no la [lo] ha sancionado, la Comisión a solicitud del Gobernador, por iniciativa propia o a instancia de algún ciudadano por referimiento de la autoridad con facultad para sancionar cuando ésta pierde jurisdicción en aquellos casos en que alican los términos indicados en este Capítulo podrá investigar y, si lo considera procedente, deberá iniciar formalmente cualquier procedimiento encaminado a la imposición de cualquier medida o sanción disciplinaria, que la referida autoridad facultada para sancionar hubiere podido imponer al funcionario, mediante la formulación de cargos específicos contra el funcionario público de que se trate dentro del término máximo de seis (6) meses, contados a partir de la fecha en que pueda entenderse que la autoridad facultada para sancionar a dicho funcionario público no lo ha sancionado...

A los fines de lo dispuesto en el primer párrafo de esta sección, se entenderá que la autoridad facultada para sancionar a un funcionprio público no lo ha sancionado, si dicha autoridad afirmativamente determina que exonera al funcionario en cuestión, o si, luego de formulada una queja o querella contra un funcionario público o de ocurridos los hechos que pudieran dar lugar a tal queja o querella transcurren ciento veinte (120) días sin que la autoridad facultada para sancionar imponga medidas disciplinarias o exonere al funcionario público en cuestión. Transcurridos los referidos ciento veinte (120) días, la facultad para sancionar al funcionario en cuestión será, exclusivamente, de la Comisión. Sin embargo, a solicitud de la autoridad facultada para sancionar, la Comisión concederá prórrogas adicionales por términos de treinta (30) días cada una, siempre que dichas prórrogas se soliciten antes de expirar el término original de ciento veinte (120) días, o de la prórroga que se hubiere concedido, y se establezca que existe razón justificada para ello. *764 , ; \ Disponiéndose que el referido término de ciento veinte (120) días aplica exclusivamente a casos donde ha habido mal uso o abuso de autoridad...".
Además, en Asociación de Miembros de la Policía de P.R. v. Betancourt Lebrón, 94 J.T.S. 83, nuestro Tribunal Supremo estableció que a los procedimientos investigativos celebrados ante la Policía de Puerto Rico no le aplica el término de seis (6) meses que dispone la Sección 3.13(g) de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2163, por no tratarse de procedimientos adjudicativos. No obstante, señala nuestro más Alto Foro que la Ley de la Policía de Puerto Rico obliga al Superintendente a llevar a cabo el trámite de la investigación "con premura". Véase, también, 25 L.P.R.A.. sec. 1014(a).
Contrario a lo aquí dispuesto, en el caso de marras la investigación llevada a cabo por la C.I.P.A. y la Policía de Puerto Rico no fue una realizada "con premura". Por el contrario la misma se mantuvo abierta por un período de tiempo irrazonablemente largo.
En atención a ello debemos concluir que la investigación comenzada contra Nazario Acosta se encontraba cerrada luego de transcurrida la antes referida prórroga o por lo menos al transcurrir un tiempo razonable luego de vencer esa prórroga. En esas circunstancias, bajo ningún concepto el investigador podía utilizar una investigación que había sido cerrada para objetar o mancillar los derechos de una persona.
Nazario Acosta alegó ante el Foro de instancia, como parte de su acción de daños, que a consecuencia de la investigación administrativa se le suspendió todo trámite en cuanto a su solicitud y admisión a la Escuela de Derecho de la Universidad Cátolica. De otro lado, también alegó que durante el año 1986 se le había denegado la licencia de tener y poseer un arma de fuego. Esta, sin embargo, le fue finalmente concedida por el Tribunal de Primera Instancia. También, señaló que en el 1992 se le negó la solicitud de licencia de detective privado que había solicitado en el 1989. Esta, no obstante, le fue finalmente concedida el 4 de febrero de 1992. Por último, alegó que en el año 1989 se le rechazó su solicitud de liquidación de ahorros y dividendos de la Asociación de Empleados del E.L.A., del dinero perteneciente a Retiro y del importe monetario de los días de vacaciones y enfermedad acumulados.
En el caso de autos la demanda fue presentada el 15 de diciembre de 1988, luego de haber transcurrido más de tres (3) años de haber vencido la prórroga concedida por la C.I.P.A. a la Policía para terminar la investigación de Nazario Acosta. A ese momento todavía quedaba viva la causa de acción relacionada con los daños que pudo sufrir Nazario Acosta un año antes de presentar esa demanda al igual que los posteriores a su presentación, producto de no haberse terminado o archivado la investigación administrativa de la que fue objeto. 
De otro lado el E.L.A. reconoce que Nazario Acosta tiene derecho "al pago en liquidación de los días acumulados en las licencias de vacaciones regulares". Escrito de Apelación, pág. 22. De la Sentencia apelada, supra, también, surge que las partes estipularon que no había controversia alguna en cuanto a que se adeudaban a Nazario Acosta los días por enfermedad acumulados, las aportaciones a Retiro y las cuotas pagadas por él a la Asociación de Empleados del E.L.A.
En la sentencia apelada no existen determinaciones de hecho de en qué consistieron los alegados daños sufridos por los demandantes, en cuanto a la negligencia del estado en utilizar la investigación administrativa contra Nazario Acosta que había concluido y, por consiguiente, desconocemos cuáles de ellos habían prescrito y cuáles no. Corresponde al Tribunal de Primera Instancia hacer esa determinación y en caso que sea necesario para ello señalar una vista para oír la prueba y argumentación de las partes.
III
Por último Nazario Acosta en su alegato solicitó que modificáramos la sentencia para condenar a los demandados al pago de la suma de $25,000 a la señora Irene Pomales por concepto de daños. Por el resultado a que llegamos en este caso este planteamiento resulta académico. No obstante, aún cuando no lo fuera y si estuviéramos en posición de hacerlo, tampoco podríamos tomar esa acción, porque Nazario Acosta no interpuso apelación alguna en cuanto a la determinación del Tribunal de Primera *765 Instancia.
Una parte que no recurre de un dictamen judicial "...en nada puede beneficiarse del recurso, aunque si puede perjudicarse. A aquel que recurre, no se le puede imponer una sentencia más onerosa que la que ya se le había impuesto por el tribunal recurrido, si la parte adversa no recurre." H. Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, San Juan, Michie of Puerto Rico, Inc., 1997, see. 5110, pág. 325. Como se dijo en González v. Cabrero, 22 D.P.R. 341, 347 (1915):
Es una regla bien establecida que las cortes de apelación examinarán solamente los errores señalados por el apelante (Jackson v. F.R.W. Co., 14 Cal., 22) y que no se tomarán en consideración aquellos errores que el apelado alegue haberse cometido por la corte inferior. (Poppe v. Athearn, 42 Cal., 606) Puig etal v. Sucesión Polanco, 16 D.P.R. 741.
También es sabido que los tribunales de apelaciones no deben entrar a considerar, excepto bajo circunstancias especiales —las que aquí no existen— planteamientos que no han sido planteados ni discutidos. Santos Green v. Cruz, 100 D.P.R. 9 (1971). Además, véase, Sánchez v. Eastern Air Lines Inc., 114 D.P.R. 687 (1983); Rodríguez Cruz v. Padilla, 125 D.P.R. 486 (1990); Quiñones López v. Manzano, 96 J.T.S. 95. En consecuencia, los foros apelativos no atienden planteamientos relativos a la parte de una sentencia de la cual no se haya apelado. Quintana Martínez v. Valentín, 99 D.P.R. 255, 257 (1970). De otro lado, en Fuentes v. A.R.P.E., 92 J.T.S. 105, a la página 9807, se dice que es "...norma firmemente establecida de que un tribunal apelativo se abstendrá de considerar los argumentos de un recurrido sobre elementos de la sentencia que no le favorecen cuando éste no ha presentado un recurso de revisión o apelación." Quintana Martínez v. Valentín, 99 D.P.R. 255, 267 (1970). Sólo serán examinados cuando su discusión sea con fines meramente defensivos. Ochoa Fertilizer Corp. v. Seix, 41 D.P.R. 914, 915 (1931). El derecho procesal nuestro es rogado y por lo tanto se presume que los tribunales actúan con corrección, siendo la obligación del apelante demostrar lo contrario. Pueblo v. Prieto Maysonet, 103 D.P.R. 102, 107 (1974).
En consecuencia, bajo ninguna circunstancia procede entrar a considerar dicho señalamiento de error.
IV
CD P § ^ Cu ° CD CD P ^ P m’ 2. D. o «• 2 o o O ap'2 w p 0.5 § T3 ° 0.a ?? 8 8 O 0-8 <D a ee¡ en O O P C3 "2 § u "O B C_j C M S ^ o o 2 § 2 P £ a o \© 0<-rt o en c5 2 O.Mo « <D P cr i 00 o CD 2 3 2 p p g en O.T3 g § O w CD co Ow O >-» co p. CD < o ^ 3 cd r<p 5 £d o. sg'fSgB-rg o -S & o -o X T3 w X cd 5o.opp£.»S3^pB: O £3 ft p i_* r\ Q. /"s r\*> _ P Cu P CD Pt P O w P w 3 CD p P P CD s>|n B/g-3 . P ^ p oo S ^ oo CD p r* G CD ... o t — * p p H* 2. k££ 52 O £r* r p. o p 9 U <w *8 2 3 p Os - o p G. c >-k y o o. P CD p-. 3 ^ 00 CD D- p O o “ 2: ef > O -g B. a g.** 3 O 00 2.<w s:g.8 ^ So 2 § P IB en <D tí P a cej 3 O p >3 3 O T3 ’O ' u O O B O B C." s?. „ oo ° £L _ & < § 2 2 m og p SiB S^o cd 3‘<JQ _,0-3 o. 5 « CD ° S p p g* M P ^ g- o <5: i-" 8 < ? cd 2 c.p p p ñ. B V 0\i S S o ve B* B" ¡3 ° |gss ÍS'iTg p o. o 2 * srg „ _ D. ° CD\ CD CD cd p Í g*: t/5 O ^-Í B O eC 'O 1 — 1 ^ S T! O ffog f CD O M C • O CD a <Ü 6 u O rt < P c-f- O CD Tr, il p. P gsli-c&i.s.l»'» S3 3 O S <0-^0 ■g es o P cd » g.l-'9 .. >» S bW.2,w rt o ^ o) -h g C'O’OS ñ 2 c W 3 i-s w ft O s g.g P p 00 2S O CTQ ^ ^ § 9 § “ 8 § £L° p CD P O Ov p p a Qt w CO p" co P ■ - w p ^ ^ a, p. g .S3 "O S-'o B 'c 2 -1 S g § « í B -8 -o B CT1 jo o 32- « g “ ' 6 2 « P O » o- o o Q <■> 3g B ñ-g g 0*50^!| O 5, p ^ S- Ti £,*5 'Sag S p p> & cd o gg.£Lu-2 P o SÍO.0^ c» CD P B • p o cd a q CD ” b a g B CD ► X3 a d) s g « 3 ¡i w-B a § b fL, 2 O fe o tí
Lo acordó el Tribunal, y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General