WALLS v. EVANS
(No. 1494; March 6, 1928; 265 Pac. 29)

104

*Brome & Brome, Paul R. Greever* and *Peter Q. Nyce,* for appellant.

*H. S. Ridgely,* for respondent; *W. L. Walls, pro se.*

BLUME, Chief Justice.

The State Board of Land Commissioners, hereinafter called the Board, is, by Chapter 59, Wyo. Comp. Stat. 1920, authorized to grant oil or gas leases on state and school lands. Pursuant to this authority, it has been the custom to issue prospectors' leases, which are granted for a limited time and which, if oil or gas is found on the land, may lead to the issuance of operating leases, either to the holder of the prospector's lease or to some one else. The Commissioner of Public Lands is the Secretary of the Board, and as such receives the applications for all such leases, and he has been given the power to grant or refuse such applications, subject to the right of appeal to the Board. Sec. 237, W. C. S. 1920. On June 4, 1919, the Board adopted, promulgated and published certain rules and regulations in connection with the leasing and disposal of lands of the state, and among others, Rule 64, relating to mineral prospectors' leases, reading as follows:

"In the granting of mineral prospectors' leases, where the land is not leased, the lease is granted to the first duly qualified applicant who presents his application accompanied by the rental and fees."

The fees and rental fixed for a mineral prospectors' lease was at the time mentioned herein the sum of $211, as shown by a printed pamphlet published by the Commissioner of Public Lands in May, 1925, and which among other things provides: "All applications must be accompanied by the proper fees, otherwise they shall not be filed of record." And again: "If the land applied for is vacant at the time of filing, priority governs and the first qualified applicant is granted a lease." And again: "Fees collected by State Land Office: All papers must be accompanied by fees."

On February 23, 1927, the Commissioner of Public Lands received an application executed by Lloyd I. Evans, appellant herein, for a mineral prospector's lease on Section 36, T. 51 N., R. 101 W., which was then vacant land. The application was accompanied by only $1.00 and was accordingly not filed. But the Commissioner wrote to Mr. Evans that the application would be filed upon the receipt of $210 additional. On February 24, 1927, and before any additional money was received from Mr. Evans, W. L. Walls, the respondent herein, filed his application in due form for a mineral prospector's lease for the same land above mentioned, accompanied by the proper amount of fees, viz: the sum of $211. It is agreed herein that both of these applicants were properly qualified to make the application. The Commissioner did not mark the application of respondent filed, but wired Evans to forward the additional sum of $210 at once or that another application would be granted. That sum was thereupon wired and paid to the Commissioner, but this was some hours after the respondent had filed his application. Thereafter, and on February 25, 1927, the Commisisoner granted the application of the appellant and rejected that of the respondent on the ground that the application of Evans was prior in time. An appeal was thereupon taken to the State Board of Land Commissioners within the time provided by law, and a majority of the Board thereupon, and on March 3, 1927, confirmed the action of the Commissioner, and as we take it, and as seems to be agreed by the parties, upon the same ground as that taken by the Commissioner. The respondent thereafter brought an action in mandamus in this court to compel the Board to issue a lease to him. State ex rel Walls v. State Board of Land Commissioners, 36 Wyo. 302, 254 Pac. 491. We held that an action in mandamus was not the proper remedy, and that the respondent had an adequate remedy by an appeal to the district court as provided by Section 753, Comp. Stat. 1920. That decision was rendered on March 21, 1927, and the respondent

thereupon took an appeal from the action of the Board to the District Court of Park County, taking such appeal within thirty days after the decision of the Board, as provided by Section 754, Comp. Stat. 1920. The trial court reversed the action of the Board, holding that the lease should have been granted to the respondent herein, and directing the cancellation of the lease to Evans, and ordered the Board to issue a lease to the respondent herein.

1. The notice of appeal was not marked filed in the district court of Park County, Wyoming, by the clerk thereof until April 4, 1927, two days after the expiration of the thirty days allowed for the appeal under Section 754, supra, and the objection was accordingly made in the trial below and is made here, that the district court of Park County had no jurisdiction to review the action of the Board. It was shown, however, that the notice of appeal was actually received by the Clerk of the District Court of Park County on April 2, 1927, and within the thirty days above mentioned. The court accordingly directed the correction of the records, so as to show the receipt of the notice of appeal within that time. We think that the action of the court in this respect was proper, and that it had jurisdiction. An endorsement on a paper is not an essential act of filing, and it is deemed to be filed when it is delivered to or received by the proper officer, to be kept on file. A party who delivers a paper to the officer for filing is not to be prejudiced by the omission or failure of the officer to make an endorsement thereon and to keep it in the record. Tomlinson v. Tomlinson, 121 Kans. 206, 246 Pac. 980; Phillips, et al. v. Beene's Admr., 38 Ala. 248; Yaltz v. State, 3 Okl. Crim. 20, 103 Pac. 1104; Green v. Hoops, 93 Nebr. 571, 141 N. W. 156.

2. It is argued by counsel for appellant that although the proper fee did not accompany the application, such application should nevertheless be considered as having been filed on February 23, 1927, and that the actual payment of the necessary money should be considered as in the nature

of an amendment of the application which should be held to have been properly allowed. We think that this point, however, is controlled by the recent decision of this court in the case of Posvar v. Royce, Sheriff, 37 Wyo. 34, 258 Pac. 587, in which we held that an attempted filing of a petition in error, not accompanied by the fees prescribed by a rule of this court, and not actually filed by the clerk, is a nullity and cannot be considered as a duly filed petition in error until after the requisite fee had been paid. This principle is followed by the United States Land Office. In re John F. Settje, 21 L. D. 137; Mather v. Brown, 13 L. D. 545. In the former case a land-filing was made, accompanied by a check that was worthless, and the register and receiver accordingly rejected the application. This action was approved and it was said:

"Evidently the application of the 27th of December, 1890, accompanied by a check on a broken bank for the fees required by law to be tendered with the application amounted to no tender at all, and the local officers were not bound to take notice of such application. It could not have the effect of clothing the applicant with any equitable right, even though he may not have received notice of the rejection of such application. He made no legal application to enter. See Clewell v. Marsh, 2 L. D. 320."

Similar in effect is Thompson v. McKay, 154 Mich. 228, 117 N. W. 624.

It is apparent that the same rule must be applied in the case at bar. Rule 64 above mentioned, as well as the instructions of the Commissioner of Public Lands, required the application to be accompanied by the proper fees. The Commissioner did not file the application of appellant until after he had received the sum of $210. The attempted filing thereof, accordingly, on February 23 was a nullity, and the application of the respondent must be considered prior in time, in accordance with Rule 64 above mentioned.

3. It is argued by counsel for appellant that Rule 64 is unreasonable, should not govern in this case, and that the Board properly exercised its discretion in disregarding it and granting the lease to appellant. It has not been pointed out, and we cannot perceive why the rule should be held to be unreasonable. It contravenes no provision of the statute or the constitution which grants the Board the authority to lease the public lands of this state. Assuming that the Board, in the absence of the rule, would have had a discretion to have granted the lease either to respondent or appellant, it had authority to set bounds to the exercise of that discretion in a reasonable manner. Sitton v. Goodwin, 119 Ore. 74, 248 Pac. 163. That is many times done by the courts, and we know of no reason why it may not be done by any public board. The rule embodies a principle applied to many juristic acts, as in garnishment and attachments. In Pomeroy v. Wright, 2 L. D. 164-167, it was said:

"Where persons must acquire right to land by the performance of some act, the maxim *qui prior est tempore, potior est jure* applies."

In the case of State ex rel. Marsh v. State Board of Land Commisisoners, 7 Wyo. 478, 492, 53 Pac. 292, 296, this court, before the adoption of any rule by the State Land Board, said:

"There is no express recognition of a superiority of right in prior applications. No doubt the Board should so conduct their proceedings that while observing the spirit and letter of the statute, and subserving the best interests of the state, partiality and favoritism would be avoided; and this will probably be more surely accomplished by a general observance of the moral rights of a prior applicant if he is able and willing to pay as much for the privilege as one whose application is filed at a subsequent time."

A like principle is observed in the application of the land laws of the United States, and in the appropriation of

waters for beneficial use in all of the western states. And in these cases it is not only a moral right but a legal right which the prior applicant or appropriator acquires. In view of the fact that this principle is applied in so many fields of human activity, we can see no possible reason why the rule in question should be held to be unreasonable. What the Board was morally bound to do in the absence of a rule, as stated in the Marsh case, could not be held to be beyond the authority of the Board· when embodied in a definite rule.

These reasons also dispose of the argument made that respondent did not, by filing his application, acquire a vested right, and that in the absence thereof he could not appeal. The statute does not limit the right of appeal to persons who have acquired a vested right, and to hold that it should be so construed would be the equivalent of holding that the Board may, in such cases, act as it pleases, arbitrarily, fraudulently or otherwise. We cannot agree to such contention.

4. Counsel for appellant argue, as stated before, that the Board had the right, notwithstanding Rule 64, supra, to exercise its discretion, under the circumstances of this case, in granting the lease to Evans, and we are cited to our decisions holding that this court will not interfere with the action of the Board unless in case of fraud or grave abuse of discretion. State ex rel. Marsh v. State Board of Land Commissioners, supra; Cooper v. McCormick, 10 Wyo. 379, 69 Pac. 301; Baker v. Brown, 12 Wyo. 199, 74 Pac. 94; Bucknum v. Johnson, 21 Wyo. 39, 127 Pac. 904; Miller v. Hurley, 37 Wyo. 344, 252 Pac. 238.. While that is so, the illegal exercise of such discretion must be held to be a grave abuse thereof, and in such case, as stated in Miller v. Hurley, or if an error of law is committed in other respects, as held in Cooper v. McCormick, supra, and in many other cases, as for instance, in Bogan v. Mortgage Company (C. C. A.) 63 Fed 192; Germania Iron Co. v. James, 89 Fed. 811; Parsons v. Venzke, 4 N. D. 452, 459, 61 N. W.

1036, 50 Am. St. Rep. 669; Howe v. Parker, (C. C. A.) 190 Fed. 738; Chapman v. Quinn, 56 Cal. 267, the courts will review the action of the Board. And the inquiry necessary in this case is whether the Board committed such an error of law, or exercised its discretion illegally by disregarding Rule 64, supra.

Counsel for appellant have cited us to several cases which are claimed to hold that the rule in question was not binding. Some of them have no bearing herein. We are referred to Carr v. Gordon, 82 Fed. 373. That case is not in point. It involved the question of the removal of an employee of the Post Office Department, who was removed contrary to an executive regulation. The court expressly states that this regulation had not been made in compliance with any law or to carry out any act of Congress. We are further cited to Knight v. United Land Ass'n., 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; Parsons v. Venzke, 4 N. D. 452, 61 N. W. 1036, and Gage v. Gunther, 136 Cal. 338, 68 Pac. 710, 89 Am. St. Rep. 141. In the first of these cases it was held that the Secretary of the Interior had the right to review the action of the Land Commissioner even though no appeal to him had been taken in accordance with the provisions of the rules of the Department. In the Parsons case, a rule of the land department required an affidavit of the service of a notice upon the institution of a contest by the agents of the government. This affidavit was not made. The contestee first appeared specially and then generally, which, the court held, gave complete jurisdiction over him in the contest. What was said accordingly in reference to the rules mentioned was practically in the nature of *obiter dicta*. In the case of Gage v. Gunther, it was held that the Secretary of the Interior had the right to re-review the decision of his predecessor, notwithstanding the fact that such re-review was not authorized under the rules. We shall not stop to analyze these cases in detail except to say that there is at least this difference between these cases and the case at bar, that in none of them was any right initiated or

privilege exercised in reliance upon any rule, as is true in the case at bar. We do not believe these cases to be controlling herein, as we shall proceed to show more fully and especially in view of the former holdings of this court as to the force and effect of rules.

Reasonable rules adopted by a board, not in contravention of or inconsistent with any law have frequently been held to have the force of law, even in the absence of a statute giving them such effect. Meads v. United States, 81 Fed. 684; North v. Jones, 53 Ind. App. 203, 100 N. E. 84; Johnson v. Lincoln County, 50 Mont. 253, 146 Pac. 471; Van Gesner v. United States, 153 Fed. 46-52; Cosmos Exp. Co. v. Oil Co., 104 Fed. 20, 45; Round Mountain Mining Co. v. Round Mountain Sphinx Mining Co., 36 Nev. 543, 138 Pac. 71, 141 Pac. 849; Clyde v. Cummings, 35 Utah 461, 101 Pac. 106; U. S. v. Domingo, (D. C.) 152 Fed. 566; Kendall v. Bunnell, 56 Cal. App. 112, 205 Pac. 78, 88; Peters v. United States, 2 Okl. 116, 33 Pac. 1031; U. S. v. Thurston County, 143 Fed. 287; Poppe v. Athearn, 42 Cal. 606. And see R. S. of United States (1878), Sec. 2478; 30 St. at L. 35; 26 St. at L. 478. In this state, rules made by the State Land Board have the force and effect of law in accordance with the provisions of Section 699, Wyo. Comp. Stat. 1920, which reads in part as follows:

"All meetings and transactions incident to the duties of said boards, together with all protests, contests or other proceedings before them, shall be regulated by such rules, regulations and forms of procedure as may from time to time be prescribed by said boards; and such rules, regulations and forms of procedure shall bear the same relations to proceedings pending before said boards, and have the same legal force and effect, upon all parties to such proceedings, as the code of civil procedure bears and has to civil actions and the parties thereto in the courts of this state."

This court has at various times construed the force of the rules of this court, which by statute have been given the

force and effect of law. And as already stated, no vital distinction exists between rules of courts and rules of various boards. In the case of Cronkhite v. Bothwell, 3 Wyo. 739, 31 Pac. 400, it was said among other things:

"There are many cases in the state reports that doubt or expressly deny the right or power of a court to change or modify its own rules to suit the circumstances of any case. Rules of court have the force of law, and are not less obligatory upon the judges than upon the parties to the action. Courts are clothed with power to prescribe such rules as may be necessary and useful in the exercise of their functions; they ought not to be relaxed or suspended to meet temporary convenience, or to be accommodated to ever varying circumstances of time. Walker v. Ducros, 18 La. Ann. 703. Where the court has established rules for its government and that of suitors there exists no discretion in the court to dispense with their rules or to innovate on established practice. Hughes v. Jackson, 12 Md. 450. Courts may modify or rescind their rules, but while in force they are the law of the court, and, as such, are part of the law of the land. Ogden v. Robertson, 15 N. J. Law 124. Every court has inherent power to prescribe rules, being limited only by their reasonableness and conformity to constitutional and legislative enactments. Without this power, it would be impossible to dispatch business. Such rules the court can change, modify, or rescind, but while they are in force they must be applied to all cases falling within them. No discretion can be exercised as to their application unless such discretion is authorized by the rules themselves. Owens v. Ranstead, 22 Ill. 173. * * * It may be possible that no statute could take from a court of last resort the power to suspend its rules to prevent injustice, as it seems that the power of such a court to prescribe its own rules is inherent and necessary to the exercise of the power lodged in the judiciary. It may be that the legislature has no power broad enough to fetter or control the courts of superior and appellate jurisdiction so as to preclude the exercise of independent juidcial discretion or judgment. There might be cases of unavoidable casualty or overwhelming necessity presented where the court would be justified in waiving or suspending a rule, even though it is provided that it shall have the binding effect of a statute."

The principle of that case was applied in Allen v. Houn, 30 Wyo. 186, 219 Pac. 573, and in Phillips v. Brill, 15 Wyo. 521, 90 Pac. 443, and in Fried v. Guiberson, 28 Wyo. 208, 201 Pac. 854, relief was granted under the rule only because of unavoidable casualty or overwhelming necessity.

The nearest case in point herein that has been found, and in which it appears that a privilege was exercised in reliance on a rule, as in the case at bar, is Germania Iron Co. v. James (C. C. A.) 89 Fed. 811, which came before the Circuit Court of Appeals a second time under the name of James v. Germania Iron Company, 107 Fed. 597. These cases involved a rule of the land department of the United States which provided that after the local land office had made their report of a pending contest to the commissioner, they should thereafter take no further action affecting the disposal of the land in contest until instructed by the commissioner. On February 18, 1889, the Secretary of the Interior decided that a prior entry on a certain tract of land was void, and that the land was open to disposal under the land laws. This decision was communciated to the local land officers on February 22, 1889. On the day after the decision had been rendered, viz: on February 19, 1889, and before it had been communicated to the local land office, James made an application to the local officers to enter the land. Hartman was the first applicant to enter it after the local officers received official notice of the decision. The Secretary decided that notwithstanding the rule above mentioned, James acquired the superior right to the land and issued a patent in accordance with this conclusion. It was held that this decision was a clear error of law, and that Hartman, the first applicant after the local officers were notified of the decision, was entitled to a decree charging the title under the patent with a trust for his benefit. The decision is so closely in point herein that we quote from it at some length. In the first of these cases the court said among other things as follows:

"When the decision of February 18, 1889, was filed in the secretary's office at Washington, there was a rule and a settled practice of the land department that no application to enter or to appropriate land withdrawn from disposal by a prior entry which was adjudged void by such a decision could be accepted until after the decision had been officially made known to the local land officers, and they had noted a cancellation of the former entry on their books. The register and receiver followed the rule and practice, and accepted the first legal application which was made after the decision was received. Notwithstanding these facts, the secretary of the interior held on December 21, 1894, five years afterwards, that a prior application to enter the land, made on February 19, 1889, in violation of the rule and practice of the department, was superior in right to that of the first applicant after the receipt of the decision, caused the entry of Hartman to be canceled, and patented the land to another, when he would have caused it to be patented to him if he had not so held. This ruling was clearly an error in law, and it entitles the appellant to the relief it seeks. Bogan v. Mortgage Co., 11 C. C. A. 128, 130, 63 Fed. 192, 195, and 27 U. S. App. 346, 350, and cases there cited. The reasonable and established rules and practice of judicial tribunals become as much a part of the law of the land as the statutes under which they act. Witness the innumerable reversals of the trial courts for errors of law in deciding questions of practice which crowd the reports of the appellate courts. Moreover, the rule and practice here under consideration stand upon far higher ground than the ordinary rules for the mere conduct of proceedings in courts. They condition the inception, the foundation, the very existence, of all rights and title to this land. Rights initiated in accordance with them became vested interests in property, and attempts to establish rights in violation of them were as though they had not been. They had become an established rule of property, upon which men relied and had the right to rely. The maxim '*Stare decisis, et non quieta movere,*' applies nowhere more universally, or with more salutary effect, than to those rules and that practice under which property is acquired or secured. It is often far more important that these should be certain and changeless than that they should be right. Men engage in business occupations, buy, sell, and contract, in reliance upon them. Lawyers advise their clients and en-

force and protect their rights with constant reference to them, and while all interests will readily adjust themselves to and protect themselves under erroneous rules, there is neither protection nor safety for any interest under shifting rules. * * * What a farce the attempt to secure rights in any judicial tribunal must become, if its rules and practice are ignored or applied at the arbitrary will of the judge who presides over the court! Under such an administration of the land department, the rights and titles which the law attempts to protect and secure would become naught but privileges dependent upon the gracious favor of its officers. The power to degrade them to this rank cannot be found in the supervisory authority of the secretary or of the commissioner. Their power of supervision is not unlimited or arbitrary. 'It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property, and a right to a patent therefor, and can no more be deprived of it by order of the commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it.' ''

In the second of these cases, the court said:

''Nothing short of an express and formal repeal or abrogation of the rule and public notice thereof by the secretary, who alone had the power to establish and overthrow rules, could have destroyed its force or limited its terms. * * * Hartman had a right to rely upon this rule and practice, and to secure this land in accordance with it, and the allowance by the secretary in violation of it, of James' entry upon an application made before the decision canceling the prior entry was officially communicated to the local land officers, was a clear error of law.''

See also Howe v. Parker, 190 Fed. 738, which involved the violation of another rule of the department and in which language was used similar to that which we have quoted above. See further People ex rel. v. Pritchard, 17 Mich. 338, and Burnett v. Winburn (Tex. Civ. App.) 25 S. W. 969.

These decisions, we think, establish the law of this case. The rule in question had long been in force, had been duly published, and the appellant cannot be heard to say that he had no notice thereof. The Board clearly misinterpreted the rule, committed an error of law in doing so, and if it may be said to have exercised any discretion at all, it did so unlawfully. It should not be permitted to change its rules during the pendency of, and for, a particular case. Rules which may affect the public and which have been lawfully adopted, should be modified or abrogated only in a formal manner and after due publicity thereof. The bar of this state would, we think, be astonished, if this court should apply its rules in one case and not apply them in another at will. It is at least as important for the land board to adhere to established rules as it is for the court to do so, since those of the board generally, much more directly than any mere procedural rules of court could possibly do, involve property interests which may not, but again may, be of much value. It is common knowledge that acts of members of land boards are apt to be regarded with suspicion. The rule in question was undoubtedly deliberately adopted by the Board for the express purpose of avoiding such suspicion, if possible, to close the door against unjust charges of partiality, favoritism and fraud, and to give all the members of the public an equal chance to avail themselves of the privilege of obtaining leases open to them under the law. This wholesome purpose and the salutary effect thereof, ought not to be permitted to be whittled away little by little till nothing is left thereof. We do not hold that this rule must be strictly observed in any and all cases without regard to the facts or circumstances that may arise. We need not go that far, or determine what circumstances might justify departure therefrom. No unavoidable casualty or overwhelming necessity, or that the paramount interests of the state were in jeopardy which, without deciding the point, might at times justify a disregard of the rule, appears herein. We are at least safe in holding that if the

120

rule, so long as it is in force, is departed from at all, it should only be for grave and important reasons of fact, and no such reasons appear in the case at bar. The District Court was right, we think, in holding that Rule 64 was binding on the Board in this case, and the judgment must accordingly be affirmed. It is so ordered.

*Affirmed.*

KIMBALL and RINER, JJ., concur.