STATE EX REL. WALLS v. DISTRICT COURT, ET AL.

(No. 1529; June 4, 1928; 267 Pac. 1060)

428

*C. L. Rigdon, H. S. Ridgely* and *W. L. Walls, pro se,* for plaintiff.

*Ernest J. Goppert,* for defendant, Susan B. Buchanan.

*Ernest J. Goppert,* for defendants District Court and C. O. Brown, Judge.

BLUME, Chief Justice.

In February, 1927, one Lloyd I. Evans and W. L. Walls filed applications for a prospector's permit to Section 36, T. 51 N. R. 101 W. A contest ensued between these applicants, and the State Board of Land Commissioners awarded a permit to Evans. Thereupon Walls, the relator in this case, brought an action for mandamus to compel the Board aforesaid to issue a lease to him. This was denied by the court, holding that Walls had an adequate remedy by appeal to the District Court, as provided by law. 254 Pac. 491. An appeal was accordingly taken to the District Court of Park County, and that Court held in favor of Walls, and that decision was affirmed by this court on March 6, 1928, in the case of Walls v. Evans, 265 Pac. 29. The judgment of the District Court above mentioned was rendered on August 31, 1927, and among other things adjudged as follows:

"That the State Land Board of the State of Wyoming be and hereby is directed to grant an oil and gas prospector's permit or lease of the land hereinbefore mentioned to W. L. Walls, the appellant herein, and that the proper officers of the State of Wyoming be and they hereby are directed to execute and deliver to W. L. Walls, the appellent herein, an oil and gas prospector's permit or lease of the lands hereinabove mentioned and described in accordance with the law of the State of Wyoming and the rules and regulations of the State Land Board, upon the said W. L. Walls paying or tendering to the Commissioner of Public Lands the sum of two hundred and eleven dollars ($211) the fees and rentals required by the laws of the

State of Wyoming and the rules and regulations of the State Land Board of the State of Wyoming.

"That in event of the said appellee, Lloyd I. Evans failing to surrender the said lease or prospector's permit hereinbefore mentioned to the Commissioner of Public Lands of the State of Wyoming for cancellation and in event of said Commissioner failing to cancel said lease or oil and gas prospector's permit within the period of fifteen (15) days of the entry of this judgment by the Clerk of the above entitled court, this judgment shall stand for in stead of and in lieu of such surrender and cancellation, and shall be taken for and deemed to be a cancellation of said lease."

This judgment was entered on the journal of the above entitled court on September 7, 1927. On September 21, 1927, Susan B. Buchanan made an application for a prospector's permit for the same land, tendering the proper fees. On September 23, W. L. Walls wrote the State Land Board as follows:

"Herewith I tender the sum of $211.00 and request you to issue to me an oil and Gas Prospector's permit for Sec. 36, Twp. 51 N. R. 101 in accordance with the judgment of the Dist. Court of the State of Wyo. in and for Park Co. a certified copy of which is on file in the office of the Commissioner of Public Lands of the State of Wyo."

On November 23, 1927, the State Land Board voted

"That the order, of the District Court of Park County, be complied with and an Oil and Gas Prospector's Lease on Sec. 36, Twp. 51 N., Rg. 101 W., in Park County, Wyoming, dated from December 2, 1927, be issued to W. L. Walls."

A lease was issued in accordance with this action. On the same day, viz: November 23, 1927, the Commissioner of Public Lands—not the State Land Board—rejected the application of Susan B. Buchanan, giving thirty days in which to appeal from that decision. A protest and appeal

from that decision was filed in the office of the Commissioner of Public Lands on December 19, 1927, setting forth some of the provisions of the judgment of the District Court of Park County, Wyoming, heretofore set out; that Evans did not surrender his lease to the Commissioner of Public Lands for cancellation; that according to the terms of the judgment of the District Court, the lease to Evans was cancelled and became void on September 22, 1927; that she, Susan B. Buchanan, made her application in due form on September 21; that Walls did not make his application until September 23, 1927, a day too late; that the land becoming vacant on September 22, she was the first applicant for the land and should be awarded a prospector's permit. On December 27, W. L. Walls filed what he called an "Answer to Protest and Appeal" filed by Susan B. Buchanan, claiming in substance that the State Land Board had no jurisdiction over the lands and no right or authority whatever to make disposition thereof other than the disposition which it was required to make by the terms and conditions of the judgment of the District Court above mentioned. The so-called appeal of Susan B. Buchanan was heard on February 2, 1928 and the decision of the Commissioner of Public Lands rejecting the application of Susan B. Buchanan was affirmed, that application being "in conflict with a lease directed to be issued to W. L. Walls by a competent court of this state." From that decision of the Board an appeal was taken to the District Court of Park County, which came on for hearing on May 4, 1928. W. L. Walls objected to the jurisdiction of the court, claiming that it had no jurisdiction of the subject matter. The court reserved its decision and proceeded to hear the appeal on its merits. Thereupon Walls applied to this court for a writ of prohibition to prohibit the said District Court from proceeding in the matter of the appeal of Susan B. Buchanan above mentioned. Notice of the application was given to

counsel for Susan B. Buchanan. At the time fix'ed in the notice counsel appeared and filed an answer for all the defendants. The case was argued orally and both sides submitted written briefs and the case was accordingly taken under advisement.

1. It is claimed by counsel for the relator herein that there was no contest before the State Land Board and that accordingly no such an appeal as was taken by Susan B. Buchanan was authorized and that the District Court had no jurisdiction of the subject matter because of that fact. The appeal taken by her was taken pursuant to Section 753, Wyo. Comp. Stat. 1920, which provides:

"Any party who may feel himself aggrieved by the decision of the State Board of Land Commissioners or the State Board of School Land Commissioners rendered in any contest proceeding held before either of said boards, may have an appeal from such decision to the District Court sitting within and for the county in which the land controversy is situated."

The appeal given in a matter of this kind is of course purely statutory, and unless the appeal taken by Susan B. Buchanan comes within the provisions of Section 753, it is clear that there was nothing to hear and that the District Court had no jurisdiction to hear an appeal not authorized. State ex rel. Boone, Judge, 42 La. Ann. 982, 8 So. 468; Lane v. Superior Court, 5 Cal. App. 762, 91 Pac. 405; People ex rel. v. Thompkins General Sessions, 19 Wend. 154; Craycroft v. Superior Court, 18 Cal. App. 781, 124 Pac. 1042; Com. ex rel. v. Yungblut, 159 Ky. 87, 166 S. W. 808; State ex rel. v. Nartoni, 201 Mo. 1, 98 S. W. 554; Tucker v. District Court, 108 Okla. 198, 235 Pac. 610; Department of Public Works v. Superior Court, (Cal.) 239 Pac. 1076. It depends, accordingly, on whether or not a contest may be said to have been pending before the State Board of Land Commissioners within the con-

templation of the statute aforesaid. Counsel for defendants contend that there was such contest, claiming that under the terms of the judgment of the District Court, above recited, the land was thrown open to be leased to any applicant, unless the relator deposited the fee of $211 within fifteen days after the entry of the foregoing judgment; that that time expired on September 22nd, 1927, that the deposit made by the relator on the following day was too late; that, accordingly, Susan B. Buchanan was the prior applicant and she should be awarded a lease on the land pursuant to rule 64 of the State Land Board, as interpreted by this court in Walls v. Evans, supra. Counsel for defendants, however, freely conceded on the oral argument that there was no contest, and no appeal as authorized by law, if it could be said that the money paid by Walls on February 24, 1927, protected his right and if it could not be said that Walls was required to make a redeposit of $211 at the latest on the date above mentioned, namely, September 22nd, 1928, and we need not examine any other point on the question now under discussion. In this connection we must bear in mind, as fully appears from the case of Walls v. Evans, supra, that the relator made his application for a lease for the land in controversy on February 24, 1927, accompanied by the proper fees, namely, $211, but that his application was wrongfully rejected. The fee so tendered to the Commissioner of Public Lands was subsequently returned to the relator, who kept it and did not again offer to pay this or any other amount until September 23rd, 1927.

The error of counsel for the defendants lies in the fact that he proceeds upon the theory that the rights of Walls were obtained under and by virtue of the judgment of the District Court above mentioned, and that such judgment was the basis of his rights. That is, of course, not true. The judgment was merely declaratory of his rights. Whatever rights he had were based upon his application

of February 24, 1927, accompanied by the proper fees. At that time relator fully and strictly complied with rule 64, and a lease should thereupon have been issued to him and the fee paid by him should have been retained by the proper officer and turned into the public treasury. That rule having once been fully complied with, it is difficult to see how it is in any way involved in this case. Counsel for defendants clearly seek to enlarge the provisions of the rule by claiming that the money, after having been wrongfully sent back to relator, should have been promptly returned to the board. The rule contains no such requirement, and if there is any merit in counsel's contention at all, it must rest upon some principle of law and not upon rule 64. We have not been cited to any case which holds that relator's rights became forfeited under circumstances as shown herein, and the principles of law which we think applicable to the case at bar clearly show the contrary to be true. We may say at the outset that we cannot see why the relator should have promptly returned the money. It is clear from the facts that it would not have been accepted. The State Land Board had issued a lease to Evans and had refused to issue one to the relator, thus unmistakably indicating that it would have been useless for relator to have sent the money back at the time, and the law does not require a vain thing. United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646; Packard v. City of Mobile, 151 Ala. 159, 43 So. 963. If the principle of keeping the tender good had ever any application in this matter at all, which we need not decide, it applied in the case of Walls v. Evans, but the point was not even noted in that case either by Evans or by the State Land Board, and it is difficult to see how a third party could raise that point after the decision in that case. Further, there is a well known rule, supported by numerous decisions, that a party should not be prejudiced in his rights by reason of the wrongful conduct of officials in con-

nection therewith. See Hasty v. Bonness, (Minn.) 86 N. W. 896; Walls v. Evans, supra. Suppose, for instance, that a party tenders a record on appeal to the clerk of this court, accompanied by the proper fee, but the clerk should wrongfully return the fee and not file the record, could it be contended that the rights acquired by the appealing party could be prejudiced by such wrongful conduct? We hardly think so. On the contrary, the record on appeal in such case should be held to have been filed as of the date of the tender. A similar principle was applied by the Supreme Court of the United States in Wirth v. Branson, 98 U. S. 118, in connection with land office matters, where it was said:

''A party who has complied with all the terms and conditions which entitled him to a patent for a particular tract of public lands acquires a vested interest therein, and is to be regarded as the equitable owner thereof. While his entry or location remains in full force and effect, his rights thereunder will not be defeated by the issue of patent to another party for the same tract.''

In the case at bar, the relator complied with all the terms and conditions of the law and with rule 64, and he should therefore, according to the principle of the case just cited, be held to have been the equitable holder of the lease to the land in controversy during all of the time that the wrongful conduct of the officers continued. The money which he deposited should, in legal contemplation, be considered during that time as having been duly paid. This principle is clearly recognized by a number of decisions. Thus in the case of Loomis v. Pingree, 43 Me. 299, money was tendered to prevent a forfeiture, but the tender was not kept good. The court said:

''It is said that the money tendered should have been brought into court. This is not an action to recover the money. An offer of payment within the time allowed by law, for the purpose of saving the forfeiture, must be re-

garded for this purpose as equivalent to an actual payment made at the time of the offer.''

And in the case of George v. Schuman, 202 Mich. 241, 168 N. W. 486, money was tendered to take up an option, but it was refused, and the court said:

"An unconditional tender of the specified amount for the purpose of avoiding loss of any rights or privilege is equivalent to payment as to all things incidental or consequential to the obligation to pay.''

A case very closely in point here is Heirs of William Friend, 5 Land. Decisions 38, decided by Secretary of Interior Lamar, who became subsequently one of the justices of the Supreme Court of the United States. It appears in that case that William Friend made application for certain lands. He published the usual notices, furnished all the proofs required by the statute, and tendered the purchase money for the land applied for; but the proofs and the money were refused because of the adverse claims of one Showers. William Friend died before the controversy was decided in his favor. Speaking of the effect of the tender of the money, the Secretary said:

''Now, in the case under consideration, the money was not *actually* paid and the entry was not *actually* made prior to the death of the original claimant. But he had done all that he was required to do under the law. He had tendered his money, and the only reason why it was not received and his entry then allowed was because of the invalid adverse claim of Showers. As before stated, my immediate predecessor rejected this claim of Showers for invalidity, and directed that Friend's application should stand. In other words, his right was held to have attached at the date of his said application. This right, as above shown, was a right to a patent if the money had been paid. That it was tendered is, so far as the applicant's rights are concerned, equivalent to the actual payment of the same. His right was, therefore, not merely a *personal* right, but was, in every sense of the word, inheritable *property.*''

The same rule, and even to a fuller extent, was applied in the case of Cunningham v. Longley, 16 Land Decisions 514.

We see no reason why the rule thus applied by the Land Department of the United States should not be applied in the case at bar, and the tender of the money once made by Walls should be held to be the equivalent to payment, and he could not be prejudiced by the wrongful refusal, or wrongful sending back of the money. This, of course, does not mean that relator, who held the money for the state in the meantime, could retain it, any more than a successful contestant under the land laws of the United States could refuse to pay the required fees after they had once been refused. But relator could not be held to be in default until a proper demand had been made upon him. A creditor who once refuses a proper tender may repent and make a demand, and when such demand is made, the money must be retendered, or the rights acquired under the original tender will fail. If the decree of the district court may be considered in the nature of a demand on behalf of the State Land Board, that decree did not fix the time within which the relator should pay the money, and in the absence thereof, the time within which relator was required to comply therewith was a reasonable time. Srafford v. Welch, 59 N. H. 46; Security State Bank v. Waterloo Lodge, 85 Neb. 255; Gillmore v. Holt, 4 Pick. 258; Sharp v. Todd, 38 N. J. Eq. 324; Town v. Trow, 24 Pick 168. In the case at bar, the money was returned the next day after the lease of Evans stood concelled by the decree of the District Court. We think that time cannot be said to have been unreasonable, particularly in view of the fact that the state is not at all complaining. We think, accordingly, that Susan B. Buchanan acquired no rights by reason of her filing; that the land was not open to be leased to her; that no contest, or occasion for a contest, existed, and the District Court was without

jurisdiction to hear the so-called appeal by Susan B. Buchanan.

We may add that some members of the court feel that the decree of the District Court in the case of Walls v. Evans cannot be construed to mean that the land in controversy was thrown open to be leased to the first comer; that even if it could be so construed, the District Court could not adjudicate any rights except those between the parties before it and their privies; that in no event could an entire stranger acquire any rights thereunder, and that if the rights of the relator became forfeited, it could not inure to any one else than Evans. But in view of what we have said, it is not necessary to mention the matter any further, or decide it. We may add further, that the relator has raised the point that the statute allowing an appeal from the State Land Board to the District Court is in conflict with Sections 1 and 10 of Article V of the Constitution of this state, but it is not necessary to decide the point, and, further, it is doubtful that he is in position to invoke the extraordinary jurisdiction of this court in this case to decide it, when his rights as to the very land in controversy here were protected under just such an appeal.

2. Counsel for the defendants further contend that the petition for a writ of prohibition herein has been brought prematurely, and could not, under the decisions, be brought until after the trial court has pased on the jurisdictional objections. We think, however, that when the court has heard the case on the merits, that such action was tantamount to overruling the objection to the jurisdiction. If that were not so, the District Court could prevent the application of a writ of prohibition in this court in practically every instance, by simply taking the objections to the jurisdiction under advisement and then proceeding to hear the case also on its merits.

It is further contended that relator has an adequate remedy by appeal or proceeding in error. In each of the cases heretofore cited on the point that an appellate court is without jurisdiction to hear an attempted appeal where no appeal is authorized, it was held that a writ of prohibition was proper, some of these cases expressly holding that an appeal in such case does not afford a plain, adequate and speedy remedy. Other cases hold that where an unauthorized act of a court creates a cloud on title, prohibition is the proper remedy. White v. Superior Court, (Cal.) 58 Pac. 450; Primm v. Superior Court, (Cal. App.) 84 Pac. 786; Jacobson v. Superior Court, (Cal.) 219 Pac. 986, 999. We need not decide how far that rule should be properly applied. In the case at bar, however, the rights of relator are of short duration. Already half the time granted him under the existing lease has expired, and the full time would in all likelihood expire before an appeal from the judgment of the District Court could be heard in this court. In view of that fact, we do not think that the remedy by appeal is either adequate or speedy.

A writ of prohibition should accordingly issue herein. The case has been fully argued and issues have been joined herein, as we understand it, with the thought that if any writ issued, it should be absolute, inasmuch as an alternative writ would not, under the circumstances, subserve any good purpose. The writ issued will, accordingly, be absolute.

KIMBALL and RINER, JJ., concur.