VAN KLEECK-BACON INV. CO., ET AL. v. WELCH

(No. 1733; March 15, 1932; 9 Pac. (2d) 156)

The cause was submitted for appellant on the brief of *Thomas M. McKinney* and *Winston S. Howard,* of Basin, Wyoming.

The cause was submitted by respondents on the brief of
*C. A. Zaring,* of Basin, Wyoming.

*Thomas M. McKinney* and *Winston S. Howard,* in reply.

RINER, Justice.

This cause is here by direct appeal from a judgment of
the District Court of Big Horn County.

The Van Kleeck-Bacon Investment Company, herein-
after designated as the "Investment Company" or as the

"plaintiff", brought an action in the court aforesaid to recover from Charles A. Welch, as defendant, the balance claimed to be due it on a contract entered into between the parties on April 15, 1926. This contract, set out verbatim in plaintiff's petition, was one for the sale by the Investment Company to Welch of two notes with separate mortgages securing the same. One of these notes was for $600 dated February 26, 1915, signed by Frederick A. Welch and payable to the order of the Investment Company, the same being secured by mortgage on certain described real estate situate in Big Horn County, Wyoming, duly recorded March 15, 1915, on the records of said county. The other was for $240 dated February 27, 1920, also signed by Frederick A. Welch and payable to the Investment Company's order, it being secured by mortgage upon the property mentioned above, the last mentioned instrument being thereafter duly placed of record.

After describing the notes and mortgages substantially as above recited and the desire of Charles A. Welch to purchase same, the contract, wherein the Investment Company was named as the "first party" and Welch as the "second party", provided as follows:

"NOW, THEREFORE, in consideration of our mutual covenants herein contained, first part agrees to sell without recourse, and second party agrees to buy said notes and mortgages for the sum of $779.80, payable as follows:
On or before January 1, 1927.........................$200.00
 ,,   ,,   ,,      ,,    1, 1929........................... 579.80
                                                                          ———————
                                                                          $779.80
together with interest thereon at the rate of 8% per annum from and after March 12, 1926.

"Upon receipt of the above amounts, as and when due, first party will execute and deliver to second party or his assigns, the original notes and mortgages above described, together with assignments thereof, without recourse."

Plaintiff's petition alleged and it was conceded by both parties that the first payment of $200 required by the con-

tract was duly paid by Charles A. Welch and accepted by the Investment Company. No other payment on the contract was ever made by him. The action was filed November 9, 1929, to recover as previously stated, the balance due under the agreement.

The defendant in answer, interposed a general denial as a first defense and as a second defense and cross-petition, in substance, that on July 17, 1928, there being delinquent taxes in the sum of $84.45 on the premises mortgaged as aforesaid and the plaintiff having neglected and refused to pay these taxes, the property was sold on account thereof to the Cowley Drainage District of Big Horn County, Wyoming; that said taxes have not been paid by the plaintiff since the sale nor has the land been redeemed therefrom; that this sale has rendered the mortgages of no value, resulting in a total failure of consideration for the contract sued upon; that the mortgagor is and since the execution of said notes has been insolvent and that, accordingly, the defendant is entitled to recover the amount previously paid by him on account of said contract. Plaintiff's reply put in issue the allegations of new matter in the answer. After trial to the court, judgment was entered in favor of the plaintiff for the balance due it upon its first executing and delivering to the defendant assignments of the notes and mortgages aforesaid. It is from this judgment that the appeal has been taken.

It appeared at the trial that the mortgagor, Frederick A. Welch, was a son of Charles A. Welch, the second party to the contract and that the latter knew of the financial status of his son at the time the contract was signed. The terms of the mortgages are not in the record as neither they nor certified copies thereof were put in evidence and, other than as given above, the provisions of the notes they secured do not appear.

It is conceded by defendant that, as between the mortgagor and mortgagee, there was no duty resting upon the latter to pay the taxes upon the mortgaged premises. It is

said that he may do so and add the sum so paid to the principal debt secured by the encumbrance, if he desires to protect his security. It is argued from this that, as between plaintiff and defendant, the former had the duty of paying the taxes imposed upon the mortgaged premises, for otherwise, ''when the time came for the execution of the contract (i. e., its complete performance) they, the respondents, would be unable to turn over anything of value to the appellant.'' Defendant concedes that he has been unable to find any cases supporting such a doctrine.

Jones on Mortgages, (8th Ed.) Vol. I, p. 565, § 441, says:

''In the absence of a covenant, a mortgagee who has a mere lien is under no duty to pay taxes, and although the mortgage contains a provision authorizing the mortgagee to pay the taxes upon the mortgagor's failure so to do does not obligate him to pay the same.''

So in Schafer v. Jackson, 155 Ia. 108, 135 N. W. 622, 625, a clause permitting the mortgagee to pay taxes upon the property covered by the encumbrance and to recover the amount so paid from the mortgagor, was held not to throw upon the former any positive duty to avail himself of such privilege and did not prevent his foreclosing the mortgage, upon the theory that he should not have permitted the land to be sold for nonpayment of taxes, the court saying:

''It may be said, further, that the provision in the mortgage permitting the mortgagee to pay taxes and to recover the amount so paid from the mortgagor did not cast upon the mortgagee any mandatory duty to avail himself of such privilege. No charge of neglect, therefore, against the mortgagee, can be predicated upon the failure to pay taxes. The plaintiff was living in the state of Ohio from 1894 up to the time of his death. As between the mortgagor and mortgagee, it was the duty of the mortgagor to pay the taxes, and the failure to do so was his default, and not that of the mortgagee.''

See also 74 A. L. R. 507-8, note and cases cited therein. It will be observed that, so far as this record discloses, it was the primary duty of the mortgagor to pay the taxes upon the mortgaged property. The Investment Company, by reason of the fact that it was the mortgagee thereof, was only obligated to pay them if it saw fit to do so. That was the situation between it and Frederick A. Welch. The query is—as between plaintiff and defendant, whose was the duty to pay these taxes in the event the mortgagor failed to perform the obligation resting upon him in relation thereto? Although, of course, the duty to make such payment might have been imposed upon either party at the time they made their contract on April 15, 1926, this was not done. The Investment Company thereby merely agreed to sell and Charles A. Welch agreed to buy the notes and mortgages aforesaid. Subsequently, the latter made the first payment on account of the purchase price. Undoubtedly, this gave him an equitable interest in the property made the subject of the contract. Inasmuch as the Investment Company was not obligated to pay the taxes as they accrued, by reason of its relation with the mortgagor, and as there was no express provision in the contract itself concerning the sale of the securities which imposed such a duty upon it, can it be said that this duty should be charged upon the Investment Company because implied in consequence of the nature of the agreement between the Investment Company and Charles A. Welch, i. e., a contract by it to sell and assign the notes and mortgages to Welch, who therein agreed to buy them and who thereafter partially paid their price?

The following cases and authorities are pertinent to a proper solution of this question:

In 2 Elliott on Contracts 725, § 1456, the author, in discussing implied warranties in assignments, uses this language:

"But in the absence of any contract or guaranty the assignor is not liable to his assigns for a breach by the other party to the original agreement of the obligations of his contract with the assignor."

The case of Galbreath v. Wallrich, 45 Colo. 537, 102 Pac. 1085, 1086, was one where a non-negotiable executory contract held by G. was assigned to W. and thereafter, the other party to the transferred contract cancelled it and declined to allow W. to perform. Concerning the point in which we are interested, the appellate court said:

"The assignment of a non-negotiable contract does not carry a warranty that it will be performed. The assignee merely impliedly warrants that the contract is what it purports to be; or, in other words, that it is genuine.—15 Enc. 1241; Giffert v. West, 33 Wis. 617; Daskam v. Ullman, 74 Wis. 474; Flynn v. Allen, 57 Pa. St. 482."

To the same effect is 2 Jones on Mortgages (8th Ed.) 457, § 1045, where the rule is said to be:

"There is no implied warranty on the part of the assignor that the debt secured is collectible, or that the mortgagor is solvent."

And 41 C. J. 683 announces the same principle in these words:

"The assignment of a mortgage for value implies a warranty that it is a genuine instrument, and to that extent that it is a valid and subsisting security; but there is no implied warranty that the mortgage debt is collectable, or that the mortgagor is solvent, nor does the assignment import a warranty that the mortgage is a first lien on the premises."

It must not be forgotten, in this connection, that there appears in the contract of the parties here, the reiterated provision that the assignment and sale of the notes and mortgages was to be made by the Investment Company to

Welch "without recourse" as to it. Concerning the effect of this language, Professor Williston in I Williston on Contracts 851, § 445, says:

"Undoubtedly an assignor may by express agreement limit the warranties which would otherwise be implied. How far this is done by the words "without recourse" has occasioned some dispute. It has been held that this throws the risk, even of forgery of the obligation, upon the assignee; but the more reasonable construction of these words is that the assignor is only seeking to make certain what the law would indeed, in any event, imply from a mere assignment, that he is not responsible for the solvency of the debtor; for an assignor unlike the indorser of negotiable paper, warrants only that the assigned claim is legally valid. He does not guarantee that the debtor will fulfil his obligations."

In Houston v. McNeer, 40 W. Va. 365, 22 S. E. 80, 82, the plaintiff took from the defendant a written assignment without recourse, of a bond on M. and sued to recover his money back on the ground of fraudulent representation. The jury found a verdict for the defendant. This was set aside and the case again tried with the same result. The second verdict, the court declined to disturb, but entered judgment thereon. On error, affirming the judgment given below, the reviewing court said concerning certain of the instructions submitted to the jury and which were made the subject of criticism by plaintiff in error:

"Do they propound the law of the case correctly? Taking them as a whole, the court says to the jury, in substance, as follows: This is a restrictive assignment; one without recourse; an agreement in writing; and therefore the terms thereof cannot be changed by parol evidence. Martin v. Cole, (1881) 104 U. S. 30, 39, 26 L. Ed. 647. It exempts the assignor from all liability by reason of the insolvency of the maker; and if the bond is genuine, and the amount of money it calls for was owing and unpaid at the time of the assignment, then the assignee is not entitled to recourse the bond by reason of any failure or inability

on his part to make the money; that is, the assignee thereby took upon himself all risk of collecting the money, provided it was in fact what it seemed to be,—a genuine, valid, subsisting debt. These instructions state the law correctly as applicable to the facts which the evidence tended to prove.''

See also, in this connection, Blackwood v. Sakwinski, 221 Mich. 464, 191 N. W. 207, 29 A. L. R. 1314.

Finally, in the case of The Real Estate Investment Company v. The Metropolitan Building Society, 3 Ont. 476, it appeared that the plaintiffs purchased from defendants certain mortgages. It subsequently developed that there were arrears of taxes due on the mortgaged lands which were then paid by plaintiffs. There was no covenant in the instrument of assignment against encumbrances. Plaintiffs sought to recover the amount so paid by them from the defendants. Declining to allow this claim to succeed, the court said:

''Under the sixth count the plaintiffs claim to be recouped, for, among other payments, moneys paid by them for arrears of taxes on mortgaged lands. I stated at the trial that these moneys were not in my opinion recoverable. I think so still.

''There is no covenant against incumbrances, nor can it be said in any sense that the taxes were paid at the request of the defendants. They were not taxes for which the defendants were liable, they were due by the mortgagors only.''

This judgment was on this point, thereafter affirmed on appeal to the Divisional Court.

Under these authorities, it is clear that the question suggested above should be answered in the negative and that the second defense and cross-petition so much relied upon by defendant must accordingly fail.

The Investment Company, by its contract to sell Mr. Welch these securities, neither expressly nor impliedly guaranteed that the mortgagor, his son, would perform his

agreement and pay the accruing taxes upon the mortgaged premises. Neither expressly nor impliedly did it agree to pay such taxes itself. To allow the second defense and cross-petition of defendant to succeed would be to create, contrary to the fact, a guaranty on the part of the Investment Company concerning the fulfillment by the mortgagor of his contractual obligation.

Bound by the contract to sell and assign the notes and mortgages to the defendant, which contract was at the time of the sale of the mortgaged property for taxes, partially performed by him, the Investment Company had a right to assume that he would complete the performance thereof and become the legal owner of them. Its only obligation was to assign the securities when the price was paid. The purchase price of the property to be transferred was at that time fixed and was an amount less than its face value. There is no question touching the validity of the notes and mortgages. If the defendant had paid the taxes himself in order to prevent the sale of the mortgaged premises, could he have recovered the amount thus expended from the plaintiff? We are inclined to think not. He would simply have been protecting security in which he then had an interest and which he would presently own entire. He could then have recouped the payment through the securities in his hands.

It is quite evident that it lay within the power of defendant sufficiently to safeguard himself in this matter. The last payment required to be made by him under the contract was to be made "on or before January 1, 1929." So, on July 17, 1928, when the tax sale occurred, he had the right to make that payment thereby obtaining full legal title to the notes and mortgages. He could then have paid the taxes in arrears and preserved the security he held. He chose to do neither of these things and now complains of the consequences of his own failure to act. Had the Investment Company, at the time the tax sale occurred, paid the delinquent taxes, what its rights in recovering such pay-

ment as against either the mortgagor or Welch, would have been, are not altogether clear, especially, if the latter immediately thereafter had made full payment pursuant to the terms of the contract to assign and demanded the transfer of the securities to him.

It is suggested that no tender of performance was made by plaintiff prior to suit brought. But, as is said in 13 C. J. 662-664:

"Formal tender is unnecessary if the party to whom performance is due * * * fails or refuses to perform on his part. * * * Similarly, a tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained a vain and idle ceremony."

See also National Importing and Trading Company, Inc. v. E. A. Bear & Company, 236 Ill. App. 426, 441; II Williston on Contracts 1588, § 832; State ex rel. Walls v. District Court, et al., 38 Wyo. 427, 267 Pac. 1060. It is perfectly plain from the position taken by the defendant in this case that the tender of the assignments of the notes and mortgages to him by the Investment Company on the final date of January 1, 1929, or thereafter, would have been a useless ceremony. Besides, under the express terms of the contract between the parties, the assignments were not to be made until the defendant made all necessary payments. This he never did.

The judgment of the District Court should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.